## Case No. 5,255.

### GARRISON v. CHICAGO et al.

[7 Biss. 480; 9 Chi. Leg. News. 362; 6 Am. Law Rec. 25; 4 Law & Eq. Rep. 166.] [1]

Circuit Court, N. D. Illinois. July, 1877.

CONTRACTS WITH MUNICIPAL CORPORATIONS— AUTHORITY OF MUNICIPAL OFFICERS TO MAKE TIME CONTRACTS.

1. The city of Chicago has not the right to contract for lighting the streets and public buildings for a term of years.

[Cited in Citizens' Gas & Min. Co. v. Town of Elwood, 114 Ind. 334, 16 N. E. 625; Putnam v. Grand Rapids, 58 Mich. 423, 25 N. W. 333.]

2. If the other contracting party has gone to great expense in pursuance of such a contract, a strong equity may arise in his favor.

3. The officers of a municipal corporation should be held to a rigid accountability in the discharge of their duty in regard to contracts of such corporation; and in all cases of contracts to run for years, the authority to make them should be clear, because they involve pecuniary liability which will be a tax upon future property owners of the city.

[Cited in City of Indianapolis v. Indianapolis Gaslight & Coke Co., 66 Ind. 404.]

In equity. This was an application for a preliminary injunction made by Cornelius K. Garrison, a citizen of the state of New York, as a stockholder of the People's Gas Light and Coke Company, an Illinois corporation, to restrain the city of Chicago from interference with the rights of the gas company, under and by virtue of a certain contract entered into by the city of Chicago with said gas light and coke company, on the 3rd of October, 1869, for the supply of gas to the city for the period of ten years, for a sum not exceeding $3.00 per 1,000 cubic feet. The bill, after setting forth the contract, and averring the expenditure of $300,000 in the construction of gas works, and $40,000 for the purpose of supplying the west division of said city with gas as required by said contract, charged, among other things,

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 6 Am. Law Rec. 25, and 4 Law & Eq. Rep. 166, contain only partial reports.]

the repudiation of the contract on the part of the city, its refusal further to receive the gas as agreed from the company, and that the said "city will, unless restrained by an injunction, enter into a contract for lighting the west division of said city and the public buildings with oil, and discontinuing lighting the west division of said city by gas, and that the said city now threatens to and will, unless restrained by injunction, enter upon and take possession of all the lamp posts erected by the People's Gas Light and Coke Company, taking therefrom the service pipe, or a portion thereof, and wholly prevent said company from using said lamp posts and service pipes connected therewith for the purpose for which they were erected." The bill prays for a temporary injunction, and "that the court may declare said contract to be in full force and effect, and that the damages of said company may be ascertained, by reason of the wrongful acts of said city." The application was made upon bill, answer and affidavit.

For the complainant it was contended that there was a manifest and undeniable violation on the part of the city of the written contract in this case, and that heavy expenditures had been incurred by the company on the faith of the contract, that irreparable injury would be sustained by the company and its stockholders if the defendant was not restrained by injunction, as prayed for in the bill. The principal ground of defense relied on was the alleged invalidity of the contract set forth in the bill.

T. G. Frost, in opposition to the application, contended, that the bill could not be sustained, nor the application for injunction could not be granted for the following reasons:

I. There was a complete remedy at law, if the contract on which the complainant's rights depend is valid, and where there is an adequate remedy at law, the injured party cannot maintain a bill in equity, or be entitled to the benefit of the extraordinary writ of injunction. Dows v. Chicago, 11 Wall. [78 U. S.] 108–112; Ewing v. St. Louis, 5 Wall. [72 U. S.] 413–419; Hannewinkle v. Georgetown, 15 Wall. [82 U. S.] 548.

II. A municipal corporation cannot be enjoined from the exercise of its legitimate or chartered powers where its action does not transcend said powers. If it has violated its contract, the injured party must be remitted to his action at law. He cannot, though there has been a palpable violation of the contract on the part of the corporation, on that ground alone, arrest the machinery of the city government, or impede it in the legitimate exercise of its functions. Public policy forbids that a municipal corporation should be enjoined from the exercise of its clear, chartered powers conferred for important public purposes. Wiggin v. New York, 9 Paige, 21–23; Mississippi v. Johnson, 4 Wall. [71 U. S.] 475–500; People

v. Bissell, 19 Ill. 231; U. S. v. Guthrie, 17 How. [58 U. S.] 305; Dows v. Chicago, 11 Wall. [78 U. S.] 108–112; Dill. Mun. Corp. §§ 58, 476, 727–729, 738, 740, and notes; People v. New York, 2 Hill, 9, 10; In re Fay, 15 Pick. 252; People v. Supervisors of Queens, 1 Hill, 196; Brooklyn v. Meserole, 26 Wend. 140. 141; People v. Galesbury, 48 Ill. 485; Dickey v. Reed, 78 Ill. 261.

III. The contract set forth in the bill and relied upon as the foundation of the rights of the gas company, and of the complainant, as a stockholder thereof, was void, and was, therefore, incapable of enforcement, either in law or equity, upon the following grounds: First. Because such a contract was not authorized by any provision of the charter, and was in conflict with its general purpose and policy, and illegally suspended the operation of the legislative and other powers of the common council for the period of ten years, and was contrary to public policy. 12 Abb. Pr. 364, 378; Presbyterian Church v. New York, 5 Cow. 538; Coates v. New York. 7 Cow. 585; Milhau v. Sharp, 17 Barb. 435; in court of appeals, 27 N. Y. 611; State v. Cincinnati Gas Light & Coke Co., 18 Ohio St. 262, 294; Dill. Mun. Corp. §§ 371, 372; Gale v. Kalamazoo, 23 Mich. 344; Britton v. Mayor of New York, 21 How. Pr. 251; City of Jackson v. Bowman, 39 Miss. 671; Gosler v. Georgetown, 6 Wheat. [19 U. S.] 593; East Hartford v. Hartford Bridge Co., 10 How. [51 U. S.] 535; Davis v. New York, 14 N. Y. 506, 532; Richmond Co. Gas-Light Co. v. Middletown, 59 N. W. 228, 232; 1 Dill. Mun. Corp. §§ 253, 254, 256, 257, 259, 296; Thompson v. Schermerhorn, 6 N. Y. 92; State v. Cincinnati Gas Light & Coke Co., 18 Ohio St. 290; Illinois & St. L. R. & C. Co. v. St. Louis [Case No. 7,007]. Second. Said contract was prohibited by the following provision of the charter, found on page 428 of Laws and Ordinances of Chicago, being section 43 of the act of February 13, 1863, viz.: "No contract shall be hereafter made by the common council, or any committee or member thereof, and no expense shall be incurred by any of the officers or departments of said city government, whether the object of the expenditure shall have been ordered by the common council or not, unless an appropriation shall have been previously made concerning such expense." No such appropriation was or could have been made prior to the execution of this contract. Appropriations are made annually, and cannot be made without special authority, to cover expenses for ten successive years at one time. Pullman v. New York, 49 Barb. 57; Bladen v. Philadelphia, 60 Pa. St. 464; Philadelphia v. Flanigen, 47 Pa. St. 22; Jonas v. Cincinnati, 18 Ohio, 318; McSpedon v. New York, 7 Bosw. 601. Third. The contract in question made by the mayor and comptroller, on behalf of the city, with the gas company, was not warranted by the authority conferred by the resolution of the common council, recited

in the contract, and under which it was executed, because, contrary to the proviso in said resolution, viz.: "that the price to be paid for the gas shall not exceed three dollars per thousand cubic feet," whereas the price fixed by the contract did exceed said price authorized by the resolution by the amount of the government tax on the gas in addition. Nor was it within the power of the city council to authorize the mayor and comptroller to make the contract in question, and leave the terms of the contract open to the discretion of these officers.

IV. The complainant, as a stockholder of the People's Gas Light and Coke Company, had no right to maintain this suit. Because he could only maintain such a suit where the corporation, of which he is a member, exceeded its powers, or allowed its franchises to be violated to the irreparable injury of the stockholder. Such a suit cannot be maintained merely because of the refusal of the corporation to commence a suit to enforce its rights even in a proper case. Dodge v. Woolsey, 18 How. [59 U. S.] 341; Memphis v. Dean, 8 Wall. [75 U. S.] 64, 76; Samuel v. Holliday [Case No. 12,288].

Corydon Beckwith, William C. Goudy, and B. F. Ayer, for complainant.

T. G. Frost, Leonard Swett, and Elliott Anthony, for defendants.

DRUMMOND, Circuit Judge. In May, 1859, the city of Chicago entered into a contract with the Chicago Gas Light and Coke Company to furnish the city with gas for ten years, viz., till May, 1869.

In February, 1855, the People's Gas Light and Coke Company was incorporated, and was authorized to manufacture and sell gas to the city of Chicago, and to erect all necessary works for that purpose.

In April, 1862, with the consent of the city, the Chicago Gas Light and Coke Company assigned all its interest in the contract of 1859, as to the west division of the city, to the People's Gas Light and Coke Company, and from that time the latter company, until May, 1869, when the contract of 1859 expired, performed the obligations of the Chicago Gas Light and Coke Company under that contract. In 1869, then, the People's Company had the means of manufacturing gas, and was selling it to the city as the assignee of the Chicago Company.

By an amendment made in 1865 to the charter of 1855, the People's Company was authorized, with the consent of the city, to lay down all necessary gas pipes along the streets and public squares. This power seems to have been exercised by the company from 1869 to 1876, and until the controversy which has given rise to this litigation.

By its charter the city had authority to light the public streets—and, it is to be inferred, the public buildings and offices—and to levy and collect a tax for that purpose. The power to provide the necessary means for lighting the streets, buildings and offices, either by the construction of a gas manufactory or by contract, would seem to follow as of course. But it can hardly be presumed, in the absence of any restrictive legislation on the subject, that it was intended to confine the city of Chicago, as its source of supply for gas, or for light, to the People's Company or to the Chicago Company. These means were furnished, but they were not exclusive.

In 1869 the charter of the city contained a provision that no contract should be made by the city involving any expense, unless an appropriation was previously made concerning such expense. And the comptroller was required in May of each year to submit an estimate of the amount necessary to defray the expenses of the city for the current fiscal year.

This provision of the charter does not seem to have been construed as a prohibition to the execution of contracts extending over one year, even where the appropriation did not meet fully the expense of the contracts, and it would be difficult to maintain that this construction is unsound. The language must obviously be applied to the subject matter of the contract, as understood by the legislature, viz.: to those matters where the terms of the contract and the time of its execution were practically within the reach of an appropriation once made.

The construction of tunnels, of water works, of public buildings, including gas works, of deepening summit levels, and many other matters within the general scope of the powers of the city, may require more than a year to complete, and must necessarily involve more than one appropriation. And yet, in view of the manifest intention of the legislature, it may be doubted whether the city would be authorized to execute any of these general powers within an estimate first made of the expense to be incurred.

But if it be admitted that this is the true meaning of the prohibition, it is clear that the purpose of the legislature was to limit the city council to the actual necessities of the particular case, and the question to be determined is whether there was a reasonable necessity on the part of the city council to extend the contract in controversy here, and which will now be mentioned, for ten years from its date, there being no appropriation made commensurate with the obligations of the contract.

We will waive the question connected with the right of the plaintiff, a stockholder of the People's Gas Light and Coke Company, to come into this court for equitable relief, and also the other question, whether there is not a complete remedy at law for a breach of the contract, if valid, against the city, questions not free from difficulty, and come to what is the principal controversy between the parties—the contract between the city and the People's Company.

On the 5th of October, 1869, in pursuance of authority given to that effect by the city council, the mayor and comptroller entered into a contract with the People's Gas Light and Coke Company, by which the gas company agreed to supply the streets and public buildings and offices of the west division with gas for $3 for 1,000 cubic feet, and the city agreed to take and use the same for the streets, buildings, and offices, and pay the price named. The contract was to continue in force till the 1st of April, 1879.

The contract contains other stipulations not material to this controversy. But it must be stated that the contract assumes that the gas company had the means of complying with its obligations. It is not the case of a contract made by the city with the company, by which the company as a consideration for making the contract with the city, was to construct and maintain gas works where there were none before. On the contrary, it is to be fairly inferred that the company had, as authorized by its charter of 1855, and its amendment of 1865, constructed gas works before October, 1869, and had the necessary appliances to execute the contract on its part. It is true, the bill alleges, and we may presume that, in consequence of the making of the contract, the company enlarged its works and made considerable expenditures; but it nowhere appears that this was a condition precedent to the execution of the contract, as that the city declared, if this shall be done, the contract shall be executed, or that the company said, if not done, then it would not be a party to the contract. This, then, being the condition of the parties as to the subject-matter of the contract, had the city the capacity to make it? I think it had not.

It is not necessary to refer to the numerous cases cited in the argument. In my judgment, they establish by a preponderance of authority, that a municipal corporation, under the powers conferred on the city of Chicago by the legislature, and under the circumstances existing here, had no right to make a contract with the People's Gas Light and Coke Company to pay for the use of gas for so long a time. And I think on principle the same conclusion must be reached.

The officers of the city—the members of the council—are trustees of the public. They are clothed with authority to legislate upon public interests. There can be do doubt that the right to regulate the lighting of the streets and to furnish means for the same by taxation, is in its nature legislative power. It concerns the whole public of the city. The effect of the contract in question by the city authorities in October, 1869, if valid, was to bind their successors for ten years as to those matters of legislation. If it be conceded that the power existed, as claimed, then it practically follows that at the end of the term in 1879, a contract may be made by their successors without limit, and which may bind the public indefinitely. I am unwilling to sanction a principle which, in a case like this, would lead to such results. The safer rule is to hold the officers of a municipality to a rigid accountability in the discharge of their trust. In all cases of contracts to run for years, the authority to make them should be clear; because they involve pecuniary liability, and it is a tax upon future property owners of the city.

To sustain the contract between the city and gas company in this case would encourage the making of such contracts in the future. It would place it in the power of companies, whose interests were to be affected by them, to multiply them, and to continue them when the public interest demanded they should cease. To condemn it is to prevent, so far as it may tend to produce that result, the use of influences which look to private rather than to public profit. It is better that all parties should understand there is a limit to the power of municipal bodies in such cases. I hold, therefore, as matter of strict legal right, that the contract of October 5th, 1869, was unauthorized, and the motion for an injunction against the city to prevent interferences with lamp posts, service pipes, etc., will be denied.

But the opinion of the court, even on this application, would be incomplete without considering the case in another aspect.

It must be admitted that the claims of the gas company against the city seem, in some respects, to be founded in a strong equity. The city assumed to treat with the company on the basis of right to make the contract. The latter may, therefore, be pardoned for recognizing the authority claimed. For several years the city conceded the validity of the contract by paying for the gas the stipulated price. It is only within the last few years, and after the cost of producing gas had been reduced, that any active efforts were made by the city to deny the obligations of the contract. If the cost of its production had been increased, we should probably never have been troubled with this litigation.

The company has made large expenditures for additional works. Many miles of mains and many service pipes have been put down. These have been much extended in parts of the city where there has been, up to the present time, no adequate return, owing to the sparseness of population there. It is alleged this has been done by the company at the request of the city, and that in consequence the company has been subjected to great loss caused by condensation and leakage of gas from the pipes not in use and not required for use when they were put down.

The contract, by its own limitation, expires in less than two years from the present time. In view of these circumstances it was suggested at the hearing of the motion for an injunction, that some satisfactory arrangement should be made between the parties, or by reference to others. The gas company has the means of supplying gas. The city needs it.

It would seem as though they could deal with each other better than with any one else. If the purpose of the city was to do nothing until the validity of the contract was ascertained, that is now accomplished so far as the opinion of this court can determine it. And, therefore, as we are now only deciding a preliminary motion in the case, it does not seem improper to renew the suggestion that was made on the hearing of the motion;—for the equity of the plaintiff appears so strong, the acquiescence of the city in the contract so long continued, that, if I could hold it binding on the city because of this acquiescence, I should feel inclined to do so, but the fact that the rights of the public cannot in any way be affected, prevents this, and nothing remains to be done in the present stage of the case but to express the wish that the suggestion of the court may be adopted by the parties.