(Hamilton County Court of Common Pleas.)

WM. M. AMPT ex rel. CITY OF CINCINNATI v. THE CITY OF CINCINNATI et al.

---

*A public lighting contract for the city of Cincinnati falls within the provisions of the Worthington and of the Burns laws.*

In making a contract for a term of years for the lighting of the streets. alleys, public places and public buildings, the City of Cincinnati is governed by the provisions of sections 2699 and 2702, Revised Statutes; if the certificate required by those sections is not made by the City Auditor before or at the time of the making of such contract, the contract is void.

(Decided March, 1895.)

---

WILSON, J.

The petition in the case is as follows:

W. M. Ampt, plaintiff, says he is a taxpayer, resident and citizen of the City of Cincinnati, and that he brings this suit on behalf of the corporation of said city, a municipal corporation of the first grade and first class, under the laws of Ohio, having first, on December 18, 1894, in writing, requested F. Hertenstein, Esq., as the corporation counsel of said city,

to bring the same in the name of said corporation; which request, on December 20, 1894, he declined to comply with.  He further says, that August Hermann, John Frey, John B. Washburn and George T. Sterritt are the Board of Administration of said city of Cincinnati, who as such are charged with the duty of auditing, allowing and ordering to be paid all bills and claims against said city and of supervising the erection of lamps under the contract hereinafter referred to; that D. W. Brown and H. M. Ziegler are respectively the auditor and treasurer of said city.

Plaintiff further says, that on the thirty-first day of May, 1892, said city of Cincinnati entered into a contract and agreement in writing with the Cincinnati Edison Electric Company, a corporation of said city, for lighting the streets, alleys, lands, lanes, squares and public places of said city with electricity for a period of eleven years from the thirty-first day of May, 1892, and that the said The Cincinnati Edison Electric Company therein agreed, for and in consideration of $84.90 per lamp per year, to light the streets, alleys, lands, lanes, squares and public places of said city with electric light for a period of eleven years from the thirty-first day of May, 1892, according to and in accordance with certain specifications adopted for said lighting by said city by a resolution for that purpose passed by the Board of Legislation of said city on March 11, 1892. Said Cincinnati Edison Electric Company also agreed in said contract, in consideration of the $84.90 per year above named, to perform all labor and furnish all material to do said lighting with all the requirements of said specifications and with the requirements of a certain ordinance No. 4285, passed by said city on October 18, 1889, in so far as the requirements of said ordinance are not inconsistent with the provisions of said specifications.

The said city in said contract on its part agreed to pay to the said The Cincinnati Edison Electric Company the sum of $84.90 per lamp per year for such lighting at the times and in the manner provided in said specifications, to-wit., within the first five days of each and every month during the continuance of said contract, lamps to be lighted every night in the year during the contract.

Plaintiff says, that by the express terms of said contact, said specifications and said ordinance No. 4285, so far as not inconsistent with said specifications, are made a part of said contract, and that said contract, specifications and ordinance provide as follows and not otherwise as to the territory of Cincinnati which is to be lighted thereunder, as to the duration of said contract and as to the terms and conditions thereof as to the lighting of said entire city:

Paragraph 5 of said specifications is as follows:

"The territory to be lighted by the contractor under these specifications shall be the present limits of the city of Cincinnati, and such additions as may be made thereto during the life of the contract.  Within twelve months from the date of contract there shall be lighted under these specifications and said contract the streets, lands, lanes, and squares and public places of the city of Cincinnati, included within Court street on the north, the river on the south, Eggleston avenue and Broadway on the east, and Central avenue on the west; with the right reserved on behalf of the city to order the lighting of additional and contiguous territory and streets at such times as it may deem proper so to do after the first described territory has been fully lighted; and it is provided that for each and every day's delay in the fulfillment of the obligation to have the first described territory lighted within twelve months from the date of the contract, the parties to whom said contract may be awarded shall forfeit for each day's delay beyond the period named the sum of fifty dollars, such

sum so forfeited to be paid into the city treasury as compensation for damages herein admitted to be incurred."

Paragraph 6 provides as follows:

"The territory remaining outside of the first district, and also alleys within the territory described as the first district, shall thereafter be lighted by electricity as the streets, alleys, lands, lanes, squares and public places as may be designated by the Board of Legislation or its successors, with the approval of the Mayor, for such electric lighting. The contract in every case shall cover contiguous territory, and the lighting shall be uniform in character, and be for the period of eleven years from the date of the original contract.

"All public buildings and parks shall be lighted upon the same terms whenever such lighting is ordered by the proper authorities having charge thereof respectively."

Paragraph 7 provides as follows:

"The streets, alleys, lands, lanes, squares and public place so designated shall be lighted with arc lamps commercially known as 2,000 candle power, and shall be operated with not less than 460 volts per lamp."

Paragraph 15, after providing for a deposit of $100,000 in public securities with the Sinking Fund Trustees of Cincinnati, or for a bond in said sum to be filed with the board of administration to secure the performance of the contract, provided as follows:

"Should the party to whom said contract is awarded, and who enters into the same, fail to commence lighting under the terms of this contract before the end of the first year, in accordance with these specifications and this contract, in such case it shall be understood, and agreed that at the option of the Board of Legislation the party to whom the contract is so made and his sureties shall become and be indebted to the city of Cincinnati in the amount of said desposit or bond of $100,000, not by way of penalty, but as a consideration for the loss of time and expense incurred by the city in consquenc of the failure to carry out the contract thus awarded."

Plaintiff further says, that on or about February 1, 1893, said Cincinnati Edison Electric Company completed the lighting of the first district by electricity under the terms and conditions of said contract, and that there have been located and are in use 253 lamps in said district.

Plaintiff further says, that afterward, on April 28, 1893, said city of Cincinnati, acting under its rights reserved in paragraph 5 of said specifications to order the lighting of additional and contiguous territory, by ordinance No. 516, passed on that day, designated and directed said company to light with electricity, under the terms and conditions of said contract, Eden Park, Gilbert avenue from Court to McMillan streets, and Windsor street from Gilbert avenue to Kemper lane; and on August 2, 1893, notified said company accordingly, and that there will be required under said contract for said lighting sixty-three lamps, of which twenty-nine are now located and in use.

And that on August 11, 1893, said city, by ordinance No. 608, passed on that day, designated and directed said company to light with electricity, under the terms and conditions of said contract, the following territory of Cincinnati, to be known as the Second District, to-wit:

Between the Ohio river and Eighth street, and between Central avenue and State avenue, and on September 15, 1893, notified said company accordingly, and that there have been in use and operation under said order since December 3, 1894, 221 lamps in said district.

And that on September 29, 1893, said city, by ordinance No. 647, passed on that day, designated all the remaining territory of the city of

Cincinnati to be lighted with electricity under the terms and conditions of said contract, the same to be done by districts nmbered respectively 3, 4, 5, 6,7, 8 and 9, the third district to be lighted by said company in three months after the date of said ordinance, and the others afterward in numerical order at intervals of three months; the ninth district to be lighted in twenty-one months from the date of said ordinance. And plaintiff says that said city, on August 24, 1894, notified said company accordingly as to the third district, which will require 192 lamps; and on December 12, 1894, notified said company accordingly as to the fourth distrct, which will require 180 lamps, and that both districts are now being prepared for electric lighting by said company under said contract.

Plaintiff says it is the intention of said city of Cincinnati and said Cincinnati Edison Electric Company to proceed with the lighting by electricity, under said contract, specification and ordinance No. 4285, as designated and directed to be done by ordinance No. 647, and by districts as provided therein, and for the purpose of lighting all the territory within the limits of said city, and that for this purpose lamps will be required and lighted as follows:

In the Fifth District...............................505 lamps
In the Sixth District......................... .........434 lamps
In the Seventh District.............................432 lamps
In the Eighth District..................... ...........620 lamps
In the Ninth District...............................633 lamps

and in all for the entire city 3,533 lamps, exclusive of additional lamps required for parks and public buildings.

Plaintiff says that the taxes and revenues of said city from all sources for lighting purposes was, for the year 1892, the sum of $244,455.39; and that the appropriation for the first half-year of 1892 was for gas and electricity, $104,000.00, and for gasoline, $18,000.00; and for the last half-year of 1892 was, for gas and electricity, $98,500.00, and for gasoline, $24,000.00.

And that on May 31, 1892, when said contract was entered into for said first district, there was in the treasury of said city an unexpended balance of said appropriation for gas and electric lighting amounting to $25,922.08, and no more.

Plaintiff says that the taxes and revenues of said city from all sources for lighting purposes was, for the year 1893, the sum of $246,546.70; and that the appropriation for the first half-year of 1893 was for gas and electricity, $106,620.00, and for gasoline, $24,000.00, and for the last half-year of 1893 was for gas and electricity, $112,030.00, and for gasoline, $18,500.0.

And that on August 2, 1893, when said city, acting under ordinance No. 516, notified said company to proceed with the lighting of Eden Park, Court street and Windsor street, the unexpended balance of said appropriation for gas and electricity was $87,917.58 and no more.

And that on September 15, 1893, when said city, acting under ordinace No. 608, notified said company to proceed with the lighting of the Second District, the unexpended balance of said appropriation for gas and electricity was $55,499.08 and no more.

Plaintiff says that the taxes and revenues of said city from all sources for lighting purposes was, for the year 1894, the sum of $271,498 68; and that the appropriation for the first half-year of 1894 was, for gas and electricity, $119,000.00, and for gasoline, $19,800.00; and for the last half-year of 1893 was, for gas and electricity, $117,500.00, and for gasoline, $24,850.00.

And that on August 24, 1894, when said city, acting under ordinance No. 647, notified said company to proceed with the lighting of the third district, the unexpended balance of said appropriation for damages and electricity was $82,296.96 and no more.

Plaintiff further says, that when said contract was entered into, on May 31, 1892, there was not sufficient money in the treasury, or estimated to come therein in said year, to meet the obligations and liabilities of said city under said contract, and that the obligations, debts and liabilities created by said contract and by and under said ordinances Nos. 516 and 608 and 647 against said city were in excess of the revenues for light purposes realized from taxes and other sources by said city for the years when said contract and said optional contracts were respectively entered into, and that said obligations, debts and liabilities were created in violation of section 2698 of the Revised Statutes of Ohio.

Plaintiff further says, that said obligations, debts and liabilities created by said contract and said optional contracts against the city of Cincinnati were in excess of the appropriations for light purpose when and at the time when the contracts were severally entered into, and so in violation of section 2699 Revised Statutes of Ohio; and that said contracts were in violation of sections 2699 and 2702 Revised Statutes of Ohio, for want of the certificate of the auditor of said city that the money required for the payment of the debts, obligations and liabilities thereunder was in the treasury of said city to the credit of the fund from which such payment was to be made, and for want of this certificate that the money was set apart for that purpose.

Plaintiff further says that said contract and said optional contracts are void as being for expenditures to be made in years other than that in which the contracs were made and as involving the creation of debts, obligations and liabilities for future years, and void further because the expenditure involved was not in either case covered by an appropriation previously made, and so in violation of section 2690 l, 2690 i, 2690 j, of the Revised Statutes of Ohio.

Wherefore plaintiff, on behalf of the corporation of Cincinnati, prays the court on the final hearing of this cause to find and adjudge said contract of May 31, 1892, and all action of said city under ordinances Nos. 516, 608 and 647 null and void.

He further prays the court to perpetually enjoin the city of Cincinnati and the defendants, who compose its board of administration, from taking any further steps or action in lighting said city or any part thereof under said contract or under said ordinances Nos. 516, 608 and 647.

He further prays the court to perpetually enjoin the defendants who compose the board of administration, from auditing, approving, allowing and from ordering the payment of any bills or claims on account of any lighting done under said contract or said ordinances Nos. 516, 608 and 647; and that D. W. Brown, as auditor of said city, be enjoined from drawing, and H. M. Ziegler, as treasurer of said city, be enjoined from paying any warrants upon the funds of said city on account of such lighting, and for all proper relief and costs.

To the petition the Corporation Counsel have filed a demurrer.

The demurrer raises the question whether the contract set forth in the petition is void, because made in violation of sections 2698, 2699, 2702, 2690 h, 2690 l, and 2690 j, of the Revised Statutes.

By sections 2491, 2492, and section 2 of the act of May 12th, 1886 (83 V, 143), power is given the council of a municipal corporation to provide for lighting the streets, alleys, public grounds and buildings, to con-

tract with electric light companies, but the mode and manner of executing the power is not defined.

Sections 2690h, 2690i, 269⬚j, 2698, 2699 and 2702 are as follows:

"2690h. In all cities of the first grade of the first class, the common council shall make, by the first week of each fiscal half-year, detailed and specific appropriations for the several objects for which the city has to provide, apportioned to each month, of the moneys known to be in the treasury, or estimated to come into it during the six months next ensuing, including in their estimate the next semi-annual December collection of taxes, and all other sources of revenue, and be careful to provide in their appropriations for every legitimate city expenditure, and to apportion the means fairly and legally among such expenditures; and their action thereon they shall transmit to the board of tax commissioners for approval, amendment or rejection, as they may determine. All expenditures within the following six months shall be made in accordance with and within said appropriation. Balances thereof, or credits remaining over at the end of the year, shall then no longer be open for payment therefrom, and shall be re-credited to the funds from which they were taken; but in making the semi-annual appropriation and apportionment hereby required, it shall be the duty of the common council to deduct and set apart, out of the fund for general purposes, the sum of fifty thousand dollars as a contingent fund to provide for any deficiency in either of the detailed and specific appropriations so to be made which may lawfully and by an unforeseen emergency happen; which contingent fund and any part thereof may be expended for any such emergency only by an ordinance passed by the votes of two-thirds of all the members of each branch of the common council, and approved by the mayor of the city.

"2690-i. In all cities of the first grade of the first class, to enable the city comptroller and the boards aforesaid to estimate correctly the levies and appropriations aforesaid, the authorities of all the city institutions, except boards of education, as well as every head of a department or office in the city, for whose wants provision is to be made, including the trustees of the commercial hospital, shall report to the comptroller, on or before the first Monday in March in each year, the amount of money needed for their respective wants for the ensuing year; said estimate to be given for each month. The comptroller, as well as the boards of tax commissioners and common councils, shall revise them, and if deemed proper shall reduce them so as to prevent unnecessary expenditure, and to bring them within fair limits to the other expenditures required by the city.

"2690j. No liability whatever shall be created against any city of the first grade of the first class, and no expenditures shall be made for same, except for school and educational purposes as provided by the boards of education therein, unless it be previously covered by an appropriation sanctioned both by the boards of tax commissioners and common council as above provided, except from the contingent fund of fifty thousand dollars herein provided for; and any tax levied for any purpose whatever, except for schools and educational purposes, as provided for by the boards of education therein, in such city without the concurrence of the board of tax commissioners and common council, as herein provided, shall be void; and all law and parts of laws conflicting with the provisions of this act are hereby repealed. Any attempt to create a liability against any such city contrary to the provisions of this act shall be null and void.

"2698. The council shall not make any appropriation nor contrat debts or obligations of any description, for either of the purposes speci-

fied in the levy of the council, as provided for in section twenty-six hundred and ninty-one, exceeding the amount of taxes, and revenue from other sources, for the current year, received for such purposes; and the money belonging to one fund shall not be transferred to another, or used for any purpose except that for which it was collected or received.

"2699. In cities of the first grade of the first class, no ordinance or other order for expenditure of money shall be passed by the city council, or a board, officer or commissioner having control over the moneys of the city, without stating specifically in such ordinance or order the items of expense to be made under it, and no such ordinance or order shall take effect until the auditor of the city shall certify to the city, council that there is money in the treasury specially set apart to meet such expenditures; and all expenditures greater than the amount specified in such ordinance or order shall be absolutely void, and no party whatever shall have any claim or demand against the city therefor; nor shall the city council, or a board, officer or commisioner of the city, have any power to waive or qualify the limits fixed by such ordinance or order, or fasten upon the city any liability whatever for any excess of such limits, or release any party from an exact compliance with his contract under such ordinance or order; nor shall any member of the city council or board of aldermen of the city, or a board, officer or commissioner of the city, have or hold any interest in a contract executed on behalf of the city , nor any interest in the expenditure of money on the part of the city other than his fixed compensation; and a violation of any provision of this section shall disqualify the party violating it from holding any office of trust or profit in the city, and render him liable to the city for all sums of money or other things he may receive against the provisions of this section and if in office, he shall be dismissed therefrom.

"2702. No contract, agreement or other obligation involving the expenditure of money shall be entered into, nor shall any ordinance, resolution or order for the appropriation or expenditure of money be passed by council or by any board or officer of a municipal corporation, unless the auditor of the corporation, and if there be no auditor the clerk thereof, shall first certify that the money required for the contract, agreement or other obligation, or to pay the appropriation or expenditure, is in the treasury to the credit of the fund from which it is to be drawn and not appropriated for any other purpose, which certificate shall be filed and immediately recorded; and the sum so certified shall not thereafter be considered unappropriated until the corporation is discharged from the contract, agreement or obligation, or so long as the ordinance, resolution or order is in force; and all contracts, agreements or other obligations, and all ordinances, resolutions and orders entered into or passed contrary to the provisions of this sections shall be void; provided, that in cities of the second grade of the first cass, funds in the hands of the commissioner of the sinking fund of 1862, so called, shall, when set apart by ordinance for any particular purpose, be deemed as money in the treasury for such purpose within the meaning of this section; and further provided, that in said cities of the second grade of the first class, whenever any loan or extension of water-works or construction of main sewers or of elevated railways, has been authorized by law, the money to arise therefrom shall be deemed in the treasury for such purpose within the meaning of this section.  Provided further, that if in cities of the second grade of the first class, contracts for street improvements extending for a period of one year, upon which payments are to be made from time to time as the work progresses, material is furnished or a service performed, such cities are authorized to enter into such contracts if the estimated expend-

iture thereunder does not exceed the taxes levied for such purposes during the term of the contract, and in such cases the certificate of the auditor, as herein provided, shall not be required other than to state the amount of levy."

These sections place restrictions on the power of a municipal corporation to contract. They refer to all contracts made by the city, and the restrictions contained in them should be construed as applicable to any contract made under the general power given municipal corporations to light the streets, etc., and to contract with electric light companies, unless such contract is specifically or by implication excepted.

A consideration of cases in which similar or analagous provisions have been passed on will show that such is a proper rule of construction.

In the case of the City of Springfield v. Edwards, 84 Ill., 626, it was held that a debt payable in the future, or payable upon a contingency or the happening of some event, such as the rendering of service or the delivering of property as well as a debt payable presently and absolutely, is within the constitutional prohibition relating to the incurring of debts by municipal corporations, and it makes no difference whether the debts be for current expenses or for something else.

In the case of Law v. the People, ex rel. Huck, Collector, 87 Ill., 385, it was decided that the constitutional provision against the creation of municipal indebtedness, beyond a certain amount, extends to and embraces debts incurred, to be paid on a future day, as well as to those payable at once.

In the case of French v. the City of Burlington, 42 Iowa, 614, it was held that no indebtedness, for whatever purpose created, is exempted from the prohibition of the constitutional provision, limiting the indebtedness, which may be incurred by a municipal corporation to an amount equal to five per cent. of its taxable property.

Where a city charter prohibits the common council from contracting debts or incurring liabilities exceeding in any one year the revenue of such year, unless authorized by a majority vote of the electors of the city, a contract made by the common council, without such vote, for the use of at least fifty water hydrants per year at fifty dollars each, for the term of thirty years, creates a liability against the city to the full extent of the thirty years rental, which aggregate liability being in excess of the revenue authorized to be raised in any one year, the contract falls within the language as well as within the mischief of the prohibition, and is void. The Niles Water Works v. Mayor, et al., of the City of Niles, 59 Mich. 311.

The charter of the city of Chicago contained a provision that no contract should be made by the city involving any expense unless an appropriation had been previously made covering such expense, and the comptroller was required in May of each year to submit an estimate of the amount necessary to defray the expenses of the city for the current fiscal year. Under such a provision it was held in the case of Harrison v. the City of Chicago, 7 Bissell, 480, that the city of Chicago had not the right to contract for lighting the streets and public buildings for a term of years.

The charter of the city of Minneapolis contained a provision that neither the city council nor any officer or officers of the city should, without special authority of law, have power to issue any bonds or create any debt or any liabilities against the said city in excess of the amount of revenue actually levied and applicable to the payment of such liabilities. Held, in the case of Kiichli v. the City of Minneapolis et al, 59 Northwestern Rep., 1086, that a contract made by the city council of the city

of Minneapolis for lighting the streets of the city for a term of five years is, under the charter of the city, void, unless the funds are on hand, and the taxes actually levied when the contract was made were sufficient to cover the liabilities incurred by the contract, and payable during the five years, and also to cover the current expenses and other city liabilities of the fiscal year for which such taxes were levied.

In that chapter of the city charter which defined the powers and duties of the city comptroller, it was provided that he should countersign all contracts made with the city, if the necessary funds shall have been provided to pay the liability that may be incurred by the city under such contracts, and no such contract shall be valid until so countersigned; while the chapter defining the powers and duties of the board of public works declared that all contracts shall be signed by the mayor and clerk, unless otherwise provided by resolution or ordinance; provided, however, that no contract shall be executed on the part of the city until the city comptroller shall have executed the same and made an endorsement thereon, showing that sufficient funds are in the city treasury, or that provision has been made to pay the liability that may be incurred under such contract. Held, that a contract of the city imposing a pecuniary obligation payable out of the revenue of the current year, not countersigned by the comptroler, is invalid, although the contract was made by another department of the city government than the board of public works. 63 Federal Reporter, 357.

The relator was employed as superintendent of street improvements by the board of improvements of the City of Cincinnarti, and was to be paid twenty-four dollars per week for his services, and performed services for the week ending May 8, 1875, and the board of improvements issued a certificate in his favor authorizing the city auditor to issue a warrant on the city treasury for twenty-four dollars, which he refused to do on two grounds. First, that, at the time of the employment and service of the relator, there was no money in the treasury set apart to meet the expenditure; and, second, that he had not certified to the city council. Held, that under the provisions of the third section of the act of April 16, 1874, (which were similar to those of section 2698), the city auditor properly refused to issue the warrant, and will not, therefore, be compelled to do so by a peremptory writ of mandamus, notwithstanding the money has since come into the treasury, and is now set apart to meet such expenditures. State ex rel. Seiter v. Hoffman, Auditor, 25 Ohio St., 328.

When a contract is entered into between the council of a village of this state and an attorney at law, by the terms of which the latter was to render his professional services to the village in all prosecutions commenced before the mayor hereof, of persons who might be charged with violation of the "Sunday Ordinance," passed by the council of said village, he to rerceive therefor, from said village, the reasonable value of such services; and at the time of the making of such contract the clerk of said village did not first, or ever certify, that the money required for said contract was in the treasury of such village to the credit of the fund from which it was to be drawn, and not appropriated for any other purpose, and there was, in fact, no money in the treasury for such purpose unappropriated at the making of said contract, the contract, under the terms of section 2702 Revised Statutes, is absolutely void, and no recovery can be had for the value of any services rendered under the same. And the fact that the amount contracted to be paid therefor was wholly undetermined, and could not be distinctly ascertained at the making of the contract, or that the services were to be rendered for the preservation of peace and good order in the village, did not take it out of the provisions of said section. Bond v. the Village of Madisonville, 2 C. C. R., 449.

The plaintiff, the Sun Vapor Street Lighting Company, alleged that it entered into a contract with the village of Lockland, on February 27, 1890, for the lighting of the streets of the village for the period of three years; that it furnished light under the contract from April 1, 1890, to November 1, 1892; that the village paid the amount due up to August 1, 1892, but refused to pay for the remaining term, and it asked judgment for the balance due. The village set up a defense.

(1.) That, at the time plaintiff alleges and claims that the village entered into a written contract with it, to-wit, on or about the twenty-seventh day of February, 1890, there was no money in the treasury of said village of Lockland to the credit of the "Light Fund," or any other fund from which said alleged services of lighting were to be paid under said alleged contract set up in plaintiff's petition.

(2.) That the clerk of the village of Lockland, did not, before the said alleged contract set up in the plaintiff's petition was entered into, or at any time thereafter, certify that the money required for said alleged contract, and for expenditures thereunder, was in the treasury of said village of Lockland, to the credit of the fund, from which it was to be drawn, and, not appropriated for any other purpose; that no such certificate was ever filed or recorded with the clerk of said village of Lockland, or upon the records thereof, nor was any money ever appropriated and set apart for the payment of any expenditures under said alleged contract.

A demurrer was filed to the answer, which the court of common pleas overruled, holding that the provisions of section 2702 applied to the contract sued on, and such provisions not having been complied with, the contract was void. The plaintiff not wishing to plead further, the court of common pleas dismissed the petition. An error the judgment was affirmed by the Circuit Court of Hamilton County. (The Sun Vapor Street Lighting Company v. the Village of Lockland, Hamilton County Common Pleas, No. 94764).

In the case of Cafe v. the Village of Wellsville, Columbiana County Common Pleas, (25 W. L. B., 250), Judge Nichols held that the provisions of section 2702 applied to a contract made by the village with an electric light company.

As to the contract set forth in the petition, there is no statute specially excepting it from the provisions of the restrictive statutes which I have quoted; nor is there in the language of such restrictive statutes nor in that of the statutes which give the power to the city to contract for lighting the streets, public places, etc., any reason for impliedly excepting such a contract.

As to the provisions set forth in the different sections which the petition alleges have been violated, it is only necessary, for the purpoes of this demurrer, to consider the restrictions contained in sections 2699 and 2702.

The first section, which applies to the city of Cincinnati alone, provides that no order or ordinance for the expenditure of money shall take effect until the auditor of the city shall certify to the city council that there is money in the treasury specifically set apart to meet such expenditure, and all expenditures beyond such amount shall be void; and the second section, which applies to all municipal corporations, provides that no contract involving the expenditure of money shall be entered into unless the auditor shall first certify that the money required for the contract is in the treasury, to the credit of the fund from which it is to be drawn, and not appropriated for any other purpose, and that all contracts entered into without such certificate shall be void.

The petition alleges, and the demurrer admits, that at no time was

the provision as to the certificate of the city auditor complied with, neither at the time of the making of the contract with the Cincinnati Edison Electric Company, nor at any time when the city designated additional territory to be lighted. If such provision was not observed, the contract is void, and the petition states a good cause of action. The demurrer will be overruled.

The decision of Judge Pugh, (23 W. L. B., 289), and of the Allen County Circuit Court, (4 C. C. R., 28), are opposed to the foregoing cases. They are against the weight of authority and contrary to the decision of the Hamilton County Circuit Court, in the Sun Vapor Street Lighting Company v. the Village of Lockland, which decision it is my duty to follow.

W. M. Ampt, for plaintiff.

Corporation Counsel, for defendants.

---

(Meigs County Court of Common Pleas.)

——————— v. ———————.

(Anonymous.)

---

The act of sodomy committed by a husband with a beast, does not constitute adultery under the laws of Ohio in regard to marriage and divorce, but does constitute extreme cruelty.

(Decided September, 1895.)