GILMAN VS. THE CITY OF MILWAUKEE.

31 563
d87 500

CITIES. (1) *Power of city of Milwaukee, under its charter, to lease land for public street.* (2) *Liability of city as tenant holding over.*

1. The charter of Milwaukee confers upon that city "the general powers of municipal corporations at common law," and expressly authorizes it to " *lease*, purchase and hold real and personal estate sufficient for the convenience of the inhabitants thereof." It also confers the right to acquire land for streets, etc., by an exercise of the right of eminent domain. *Held*, (LYON, J., dissenting), that the city might *lease* land for temporary use as a public *street*, when the convenience of the inhabitants required.

2. Where the city, for such a purpose, took a lease of land for one year, and neglected at the end of the year to quit and deliver up the possession, but continued to hold, use and occupy the land: *Held*, that the same rule should apply as in ordinary cases, and the lessor might, at his option, consider the city as a tenant from year to year upon the terms of the lease.

APPEAL from the County Court of *Milwaukee* County.

This action was founded upon an indenture of lease, dated February 23, 1866, and executed by the plaintiff as party of the first part, and signed by the mayor and countersigned by the comptroller of the defendant city in its behalf as party of the second part, and sealed with its corporate seal; by which instrument plaintiff leased to the city, for the term of one year from said date, upon terms set forth in the complaint, two lots therein described. The complaint avers that prior to the making of said lease, the common council of the city authorized the making of the same, and that it was made pursuant to such authority for the purpose of enabling said city to use the de-

mised premises as part of a public street in said city; that the defendant city took possession of the premises under the lease, and continued to hold and occupy them until February 23, 1867, when the term expired; that it did not quit and deliver up to plaintiff .the possession of the premises after the expiration of the term, but held the same over, and hath ever since held, used and occupied them. and still continues so to do; "whereby said city became, and this plaintiff hath elected, and hereby elects to consider said city, the tenant of this plaintiff, of said premises from year to year upon the terms of said lease, according to the statute in such cases made and provided, and whereby said city became and is liable to this plaintiff for the rent of said premises for the years commencing respectively on the 23d of February, 1867, 1868, 1869 and 1870," etc. Demand and refusal of payment is then alleged, and judgment demanded for the full amount of the rent, by the terms of the lease, for said four years, with interest, etc.

The defendant city demurred to this complaint as not stating a cause of action, particularly alleging that the city had and has no power to take a lease of the premises described in the complaint for the purpose of enabling it to use the same as a part of a public street. From an order sustaining the demurrer, plaintiff appealed.

· *Johnson & Rietbrock*, for appellant, waiving the question whether " the general powers possessed by municipal corporations at the common law," which are conferred upon the defendant by its charter, would enable it to enter into the contract sued upon, relied upon sec. 21, ch. 10 of the charter, which provides that said city " may *lease*, purchase and hold real and personal estate sufficient for the convenience of the inhabitants thereof;" and they argued that the provisions of the charter enabling the city to exercise the right of eminent domain, and to charge the expenses of opening new streets and other public grounds upon the owners of the adjacent lands to the extent that they may be benefited by the improvements, are not

exclusive of other modes of acquiring land: (1) because this would prevent the city from acquiring land for public streets by dedication, and thus close up a large part of the streets in Milwaukee and every other city in the state; and (2) because those provisions, by their express terms, apply not only to streets and alleys, but to all other public grounds as well, and thus nothing would be left to which the general authority to purchase and lease real estate could apply. Counsel also cited *Kneeland v. Gilman*, 24 Wis., 39, as expressly affirming the validity of an arrangement between these very parties by which the city was to have and did have the temporary use of these very lots for a street.

*E. G. Ryan*, City Attorney, for respondent, argued, 1. That the city had no power to acquire land for a highway by lease. A highway held under demise is a thing unknown in the law. The purposes of a highway do not require the fee, but they do require the absolute use, subject to no interruption, defeasible upon no contingency. The idea of a landlord re-entering upon a highway to distrain passing animals or other property, or to evict the public, is preposterous. The books of the law, ancient and modern, contain much discussion upon the power of municipal corporations to take and hold real estate, and upon the acquisition of land for public highways, and upon the title of the public in highways. But the tenure of a highway by demise appears to have always been a thing out of the comprehension of writers on the subject, so as not to have been dignified even by denial. We find authority, more or less general, in the public to hold real estate under lease for various other municipal purposes; but, so far as is known, not one word to countenance the idea of a public title by demise in a highway. So we find private ways created by lease, but no vestige of a public highway so created.

There are two ways in which the city of Milwaukee has power to take lands for streets: (1.) By dedication, under the general laws of the state, and under the charter of the city;

and (2.) By acquisition under the right of eminent domain by proceedings given by ch. 6 of the charter of 1852, and by acts amendatory thereof. Some reliance is placed by the plaintiff on sec. 21, ch. 10 of the charter, which gives the city a general power to lease, purchase and hold real and personal estate for the convenience of the inhabitants, and to sell and convey the same. But this language appears clearly to exclude acquisition for highways. Highways are not for the convenience of inhabitants only, but of all the world who may have occasion to travel them. The real and personal property which may be taken under this section is for other purposes of convenience than highways; and the power to sell, commensurate with the power to take, absolutely excludes highways from the power. So does the exemption from taxation. Local municipal property, held for the convenience of the inhabitants, might indeed be the subject of taxation, but common highways are essentially beyond the scope of taxation. But 'were this otherwise, the general rule of construction, sanctioned by this court in *Western Bank v. Tallman*, 17 Wis., 532, and other cases, that special provisions relating to a particular subject control general ones, would remove all difficulty here. Chapter 6 of the charter provides specially the means by which the city may acquire land for streets, is specially devoted to that object, exhausts the whole subject, and is exclusive of any control by any general provision of ch. 10. Aside from dedication, the city has no power to take land for streets, except that given by ch. 6 and the acts amendatory of it. And dedication, which may be by grant, by deed, cannot be by demise. It must be in perpetuity, determinable only with the public use. It must be unconditional, excepting the single condition of the public use. It cannot be by lease, for a limited term, reserving rent.

2. Counsel further argued that even if the lease was valid, it should be strictly construed, in a case like this, and not extended beyond the term demised by mere intendment. A reason-

able construction must be given to the averment that the city continued to hold and did not quit the premises. It is not easy to see how the city could have quit the premises. It has no authority to prevent individuals from traveling across open lots. The plaintiff could exclude them, and it was for h'm to re-enter. The nonpayment of rent after the specified year of the demise, plainly indicates the intention of the city not to hold over. And it is only by *actually* holding over possession that the tenancy from year to year is intended. The averment of holding over in such a case as this should be specific and special, showing some acts of the city authorities indicating a continued use, or other acts of continued possession under the lease.

CoLE, J. The counsel for the plaintiff, in his brief, fairly states the real and only question arising in this case, which is, whether the city of Milwaukee has the authority under its charter to lease land situate within the corporate limits for the use of a public street in any case? If it has, the demurrer to the complaint was improperly sustained.

The charter confers upon the municipal corporation "the general powers possessed by municipal corporations at common law," and, among other express grants, authorizes the city to "lease, purchase and hold real and personal estate sufficient for the convenience of the inhabitants thereof." Section 21, ch. 10 of the charter. The charter also confers ample authority upon the city to acquire land for streets, alleys, and public grounds, through the exercise of the right of eminent domain. Ch. 6.

Now, in respect to the first specific grant above cited, it is claimed and insisted that it clearly authorizes the city to purchase or lease real estate for the convenience of its inhabitants, and therefore, if the convenience of the inhabitants would be promoted by the leasing of land for the use of a public street, the city authorities have the right and power to lease ground

for that purpose. It is said it might be necessary, in some emergency, to secure the temporary right of way around some obstacle in a street, which is being removed; or to open communication between two points by a temporary route while a permanent street or bridge on another route is being built or made passable; or the business of the city might demand the opening of a thoroughfare before the dilatory proceedings for condemning land could be taken; and therefore, in these and like cases, it is essential that the city have the right to lease or purchase grounds for the use of a public street temporarily, if not permanently.

It seems to us that there is great force in this view of the matter, and that it is not extending the above provision beyond its just limits to say that it authorizes the city to lease grounds within the corporate limits for the use of a public street. See the cases of *Rains v. The City of Oshkosh*, 14 Wis., 372; *Town of Beaver Dam v. Frings*, 17 id., 398; and *Kneeland v. Gilman*, 24 id., 40. It is readily perceived that occasions might arise which would render it absolutely necessary for the city authorities to exercise such a power, and acquire land for the use of a street by lease or purchase. The counsel for the city contends that the lease set forth in the complaint is *nudum pactum*, because, he says, the city has no power to take land for a public street by demise. Such a thing as a public highway held under a demise, he says, is unknown in the law. The fundamental idea of a public street, doubtless, is a way that all the public have the right to use for the purpose of travel and passage; and in order to secure these ends, the fee or the absolute use must be in the public. The premises demised in the present case were not a part of a public street in any such sense. For here the fee remained in the plaintiff, and the only right the public acquired in the land was the right to use it temporarily for a street. At the expiration of the lease the landlord had the right to resume possession of his property, and to put an end to the passage of the public over it. Ordinarily, when a highway is once

opened and established, it remains a highway until changed or discontinued by legal authority. But here the free and uninterrupted use would terminate when the city should surrender the lease and restore the possession to the owner. So that, in fact, while the city and public at large might use the demised premises as a part of the public street, for the purpose of passage, yet they were not a part of the street, since the rights of the plaintiff over the land became absolute at the expiration of the lease. And this shows that while the premises might be used temporarily for the purposes of a highway, they never really became a part of the street, and remain to this moment private property. The principles applicable to ordinary highways do not apply, any more than they would if the city itself had owned the lots and had permitted the public to use them for the purpose of passage. And therefore the question, as it seems to us, is not whether a public highway can be held under a demise, but whether the city could lease lots for the use of the public to travel over in any case and upon any emergency. And we are inclined to hold that the city has that power, and that in executing the lease in suit the city authorities did not act *ultra vires*, as contended by the city counsel.

It appears from the complaint that the lease in question was for the term of one year from the 23d day of February, 1866. It is alleged that at the expiration of said term the city did not quit and deliver up to the plaintiff the possession of the premises, but continues to hold over and use and occupy the same; and the plaintiff elects to consider the city his tenant from year to year upon the terms of the lease. Now it is said the lease should be strictly construed, and held to be not binding beyond the term demised. But we think the rule in ordinary cases should apply. The city might easily have notified the plaintiff that it did not wish to rent the premises for a longer term, and that he was at liberty to resume possession at the expiration of the year. As it did not do so, but continued to use and occupy

the premises, we see no ground for saying that it is exonerated from the payment of the rent.

It follows from these views that the order of the county court sustaining the demurrer to the complaint must be reversed, and the cause remanded for further proceedings according to law

Mr. Justice LYON is of the opinion that the defendant has no power under its charter to lease land for the purposes of a street or public highway, but can only obtain the same for such purposes by an exercise of the right of eminent domain in the manner prescribed by law. He therefore dissents from the views of the majority of the court, and thinks that the order appealed from should be affirmed.

*By the Court.*— Order reversed, and cause remanded for further proceedings according to law.