THOMAS A. DAVIES, Appellant, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondents.

A municipal corporation or a county has the power to lease real estate when the use thereof is needed to carry out any of its acknowledged powers and purposes.

In May, 1872, in pursuance of a resolution of the board of supervisors of the county of New York directing it, a lease was executed by the mayor of the city and by plaintiff, by which the latter leased to the city certain rooms as chambers for the recorder, for one year; that officer occupied them until July, 1877, and delivered up the keys to plaintiff about May 1st, 1878.    The rent was paid by the comptroller of the city at the rate named in the lease, up to November 1, 1876.    In December, 1876, under a resolution of the board of aldermen, other rooms were set apart for the recorder, but because they were unfit for occupancy he did not take

possession of them until June or July, 1877    In May, 1877, plaintiff was notified by the comptroller that the city would not be held liable after May 1st of that year. In an action brought to recover rent accruing after November 1st, 1876, *held,* that the recorder having been placed in possession under the lease by the board of supervisors, whose duty and power it was to procure him chambers, it was to be presumed that it acquiesced in his continuance in possession after the expiration of the lease; that the board, having the power originally to take the lease, had the power also, with the consent of the landlord, or without his dissent, to hold over after the term had expired; that by acquiescing in the action of the recorder the board exercised this power, and the lease was thus renewed from year to year, and that plaintiff was entitled to recover.

Also *held,* that such a renting did not fall within the phrase "work or supplies" for which there must be, under the city charter of 1873 (§§ 92, 112, chap. 335, Laws of 1873), a letting by contract to the lowest bidder and certificate of necessity from the head of a department.

Also *held,* conceding that upon the adoption of the resolution of December, 1876, by the board, the continuance in occupation by the recorder was no longer permitted, plaintiff was at least entitled to the rent for the balance of the rental year, *i. e.,* to May 1, 1877.

*The K. & J. Co.* v. *The Mayor* (4 Bosw. 80), distinguished.

*Davies* v. *Mayor, etc.* (13 J. & S. 373), reversed.

(Argued December 3. 1880; decided December 14, 1880.)

APPEAL from judgment of the General Term of the Superior Court, of the city of New York, entered upon an order made November 3, 1880, overruling plaintiff's exception and directing judgment on a verdict. (Reported below, 13 J. & S. 373.)

The nature of the action and the facts appear sufficiently in the opinion.

*Edmund Coffin, Jr.* for appellant. The mayor, aldermen and commonalty may be held liable as a tenant at sufferance holding over after the expiration of the term. (*Witt* v. *The Mayor,* 5 Robt. 248 ; 6 id. 441; *Schuyler* v. *Smith,* 51 N. Y. 309, 316 ; 1 Hilliard on Real Property, 394 ; 4 Kent's Com. 117 ; *Conway* v. *Starkweather,* 1 Denio, 113 ; *Hume* v. *The Mayor,* 74 N. Y. 264; *McGaffin* v. *City of Cohoes,* id. 387 ; *Brown* v. *The Mayor,* 66 id. 385 ; *Farmers' Loan and Trust Co.* v. *Mayor,* 4 Bosw. 80 ; *McCloskey* v. *City of Albany,*

7 Hun, 472; *Moore* v. *The Mayor,* 73 N. Y. 238.) The
mayor, aldermen and commonalty of the city of New York
were under legal obligation, at the times mentioned in the
complaint, to provide chambers for the recorder and to pay
for them. (Chap. 367, Laws of 1872, vol. 1, p. 908; chap.
137, Laws of 1828, § 23; Valentine's Laws, 637; Laws
of 1852, § 1; chap. 304, Laws of 1874, 360; *Schenck* v.
*Mayor, etc.,* 67 N. Y. 44.) The board of supervisors prop-
erly contracted a liability for rent of these chambers in 1872,
for one year at the annual rent of $2,000 for use of the re-
corder. (*Thomas* v. *Nelson,* 69 N. Y. 118; *Dorr* v. *Barney,*
12 Hun. 259.)

*D. J. Dean* for respondent. The resolution proven on the
part of the defendant was insufficient to authorize the alleged
lease. (*People* v. *Edmonds,* 15 Barb. 529; *Halstead* v. *The
Mayor,* 3 N. Y. 430; *Baker* v. *The Mayor,* 9 Abb. Pr. 82;
*White* v. *The Mayor,* 2 Legal Observer, 26; *People* v. *Stout,*
23 Barb. 338.) The act of the recorder, retaining possession
of the premises after the expiration of the term, could impose
no liability upon the county. (Laws of 1873, chap. 335, § 112.)
A municipal corporation is not bound by the unauthorized act
of its official. (*M'Donald* v. *The Mayor,* 4 N. Y. Sup. Ct. 177;
*S. C.,* 68 N. Y. 23; *Burns* v. *The Mayor,* 5 N. Y. 371;
*Brady* v. *The Mayor,* 20 id. 312; *S. C.,* 2 Bosw. 173; *Dono-
van* v. *The Mayor,* 33 N. Y. 291; *Hodges* v. *Buffalo,* 2 Denio,
112; *Appleby* v. *The Mayor,* 15 How. 428; *Supervisors* v.
*Bates,* 17 N. Y. 242; *Smith* v. *The Mayor,* 10 id. 538; *Ellis*
v. *The Mayor,* 1 Daly, 102; *Bonesteel* v. *The Mayor,* 22 N.
Y. 162; Dillon on Municipal Corporations, §§ 272–381; *Super-
visors of R.* v. *Ellis,* 59 N. Y. 620.)

FOLGER, Ch. J. This is an action brought to recover rent.
The plaintiff showed on the trial that he owned premises in
New York city, known as rooms Nos. 1, 2, 3, in No. 317 Broad-
way; that the board of supervisors of the county of New
York, which was then made up of the mayor, the recorder,

and the aldermen of that city (Laws of 1870, chap. 190, § 1, p. 481) on the 13th May, 1872, by a resolution entered in the minutes kept of the proceedings of the board, directed that a lease be executed of those rooms, for the purpose of chambers for the recorder, for one year from May 1st of that year, at an annual rent of $2,000 ; that a lease was executed by the mayor of the city, and by the plaintiff for that term and at that rent of those rooms ; that the recorder became the occupant of them, and continued so to be until in July, 1877, and delivered the keys to the plaintiff about 1st May, 1878 ; that rent was paid to the plaintiff by the comptroller of the city, at the rate named in the lease, up to 1st Nov. 1876 ; that no rent was paid to him by the city after that date ; that he was notified by the comptroller in May, 1877, that the city would not be held liable after the first day of May of that year ; and that he rented the rooms to other tenants on the first day of May, 1878.  The defendant showed that the board of aldermen and mayor on 28th December, 1876, set apart rooms in a building of the city as chambers for the recorder.  The plaintiff showed that the recorder did not take possession of those rooms until in June or July, 1877, by reason of their unfit state for occupancy.

The plaintiff was nonsuited at the trial, and that action of the trial court was sustained at the General Term.

The consideration we have given to the case leads us to a different result.

We have no doubt that a municipal corporation, such as is the city of New York, or a *quasi* corporation, such as is a county in this State, has the power to enter into a lease and become a tenant of real estate, when the use thereof is needed to carry out any of its acknowledged powers, and to attain the public purposes for which it was erected.  (*Inhabitants, etc.* v. *Wood*, 13 Mass. 193.)  We speak of the city of New York, and also of a county, because it is not clear in the case to which the lease made by the plaintiff was given.  The written paper was not produced at the trial.  The plaintiff was asked if he ever had in possession a paper purporting to be

a lease executed on behalf of the city, and said that he thought that he had. He said that it was executed by the mayor; that he could not testify as to the seal; that it was indorsed "Mayor, Aldermen and Commonalty of the city of New York." This is all the testimony as to the party which took the lease. It does not matter at this day, so far as liability is concerned, whether it was the county of New York or the defendant, for in 1874 the two were united as one body politic and corporate, and the city was made answerable for all the liabilities and obligations of the county (Laws of 1874, chap. 304, § 1, p. 360), and no arrears of rent are claimed that accrued before 1st November, 1876. To be sure, the complaint avers a lease made and entered into by the city, but no point was made on this at the trial, and it does not seem to us now that the plaintiff should for that be hindered from a recovery, if in vital matters he has made out a case. It is not objected that the mayor was not a proper officer to sign a lease, and, so far as that was concerned, commit the defendant or the county to the obligations of a tenant. So that we have a lease in due form, duly executed as to the manual act of signing it, and occupation taken under it, and payment of stipulated rent made for several quarters by the financial officer of the defendant.

Though the defendant or the county of New York may take on the relation of a tenant, it is not every public officer of either of them that may bind it in that wise, without authority from a source having lawful power to give it. We have seen that the board of supervisors did direct the taking of this lease. It was the duty of the plaintiff to furnish a citation to the statute that conferred power upon the board to do this. He has not given a citation to any statute that does it in express terms; nor have we, in cursory examination, been able to find one. But he has cited a statute in which the legislature treats the matter as if the power existed and had been, before the passage of that act, exerted. (See chap. 367, Laws of 1872, vol. 1, p. 908, §§ 2, 3.) In that, after legalizing the action of the board of supervisors as to the salary of the recorder, the legislature

forbids him any other compensation for official labor, but provides that such provision shall not prevent the board from providing chambers for him. It was soon after the passage of this act that the board made its resolution directing a lease to be taken for the plaintiff's premises. There are statutes, in much repetition, authorizing and directing the supervisors of the county of New York to provide for the expenses of the judicial force of the county, to see to repairs of court-house and jail, to provide courts with rooms, to fix the salaries of judicial officers, including the recorder. In Hoffman's Digest of Laws relating to the city and county of New York, volume 1, page 428, it is said that the board of supervisors is required, by various laws, to furnish offices for the use of county officers; and that the sums paid for the rent of such offices fall within this head. He does not, in any other manner, cite the laws that he speaks of. He refers to the printed volume of the proceedings of the board of supervisors for 1863 (Doc. 13, p. 48) where there is the estimate of $12,200 for such rents for the year 1864, in which is a sum of $1,000 for J. T. Hoffman, recorder. The Laws of 1864 (p. 942) empower and direct the supervisors to raise, by tax, a sum for rents. In the present state of the case, we will take this as a sufficient showing of lawful power in the board, either by direct legislative conferment, or by legislative recognition of and acquiescence in use, to procure chambers for the recorder, and flowing therefrom the power to procure them by renting premises therefor.

Then we have here a lease duly executed in form, and with authority to take it. It was for one year only, however, and the plaintiff is claiming rent according to its terms for a time near four years after its stipulated term had expired. He claims that the tenant made by the lease held over after the expiration of the term agreed upon, and that, upon familiar rules, the tenant is liable for other years of continued occupation on the terms of the lease. The occupation by the recorder was enough to bring the case within those rules, if it was an occupation that had the lawful effect of binding the original lessee. The recorder could not, by his act, if it was no more

authorized than by his own will, affect the lessee to that extent. It was not in his official power to bind the county or the city, in the first instance, to a tenancy under a lease, nor could he, by his act, without authority or acquiescence from a higher power, create a holding over that would make either liable. But he did not continue in possession for himself. He was placed in possession under the lease by the board of supervisors, whose duty and whose power it was to get for him chambers. That power and duty remained with the board; we must assume that it felt the duty and discharged it, and exerted its power by acquiescing in the continuance in possession by the recorder. It was as well to discharge that duty in that way, if the rooms were eligible and the terms of the lease reasonable, as by a renewal of the lease formally or by procuring other apartments. We must assume that in the routine of the business of the board, this subject came to the surface in its turn, and was disposed of by recognition of the continued occupation by the recorder, and by contentment therewith. And this notion has support from the action of the board of aldermen in December, 1876. That board had at that time, under the law of 1874 (*supra*), taken the place of the board of supervisors; and finding rooms unoccupied in a public building, designated them as the chambers of the recorder, thus showing that they remembered and discharged the duty devolved upon them and giving ground for the inference that it had not been forgotten before, but had been satisfied by permitting the recorder to stay in the rooms of the plaintiff. The board of supervisors had the power to procure rooms by taking a lease in the first instance, and thus the power of creating a tenancy. It had the power to do such things as are incident to the relation of a tenant and may lawfully go with or follow it. One of those is with consent of the landlord, or, in the absence of his dissent, to hold over after the expiration of the term. It is, in effect upon the tenant, another way of renewing the lease for another year. By acquiescence in the action of the recorder, the board used this power and from year to year renewed the obligation upon the lessee to perform the covenants in the lease.

We see no objection to this action of the board in any of the provisions of the charter, so far as the facts in the case disclose any thing. It does not appear that the expense of the rent of these rooms was in excess of the appropriation for such purpose. (Laws of 1873, chap. 335, § 112.) We do not think that the renting of rooms for such purpose falls within the phrase "work or supplies," for which there must be a letting by contract to the lowest bidder (id., § 91), and certificate of necessity from the head of a department. (Id., § 92; see 4 Bosw. *infra.*) Nor is it a hiring for a period longer than five years. (Id., § .18.) It is for a year at a time, and may be abandoned before another year has begun.

Our discussion shows that the case of *The Farmers' Loan & Trust Co.* v. *The Mayor* (4 Bosw. 80) is not in point; for there, was no authority to take a lease at first, nor was a lease taken. There, was a wrongful taking possession by public officers at the outstart, and a wrongful and forcible continuance, though there was a promise of compensation; but both were without authority.

The defendant takes a position, based upon the resolution of the board of aldermen of December, 1876, of which we have spoken. It is claimed that when this was adopted, the continuance in occupation by the recorder was no longer permitted by the source of power; that he was bound to obey orders, and should have left the rooms at once and that his longer stay was not a holding by the defendant. If this should be granted, it does not go to the whole case of the plaintiff. He was paid to the 1st November, 1876, only. The rental year, upon which the holding over had then entered, did not end until 1st May, 1877, leaving two quarters for which the lessee was bound. It is not needful to consider how it would be, for so much of the rest of the year 1877 as is claimed by the plaintiff. The facts may be more fully developed on another trial.

It appears from what we have said, that some of the matters involved in the case are not as clear as is to be wished for. We are satisfied, however, that the ground is not tenable on which the nonsuit was put at Circuit and upheld at General

Term; while upon the other points the preponderance is with the plaintiff. We accordingly reverse the judgment and direct a new trial.

All concur, except MILLER, J., dissenting.

Judgment reversed.