## J. A. AMBROZICH AND ANOTHER v. CITY OF EVELETH.[1]

July 30, 1937.

No. 31,322.

[1]Reported in 274 N. W. 635.

474

*Stone, Manthey & Montague,* for appellants.
*M. F. Teplicky,* for respondent.

PETERSON, JUSTICE.

Action to recover $390 rent at $130 per month due under written lease for the months of June, July, and August, 1936. The premises were leased by plaintiffs to defendant for a public rest room, tourist waiting room, office rooms, or any other lawful purpose. The lease was given in cancellation of the five months remaining of the old term and for a new term of ten years. The property has been leased by defendant continuously for over 14 years, there having been four prior leases. The property was under lease to defendant when plaintiffs acquired title on July 15, 1922. A renewal lease was entered into in March, 1923, for a period of two years, which was renewed in March, 1925, for another two years. While this last lease was in effect, a renewal lease was executed on May 19, 1926, for a period of ten years from June 1, 1926. The present lease was executed on January 6, 1936, while the last mentioned lease still had a few days less than five months to run. Prior to the city election in 1935, negotiations were had between plaintiffs and defendant for a new lease. The matter was discussed by them in September, 1935. In October, 1935, the sum of $4,225 was included in the 1936 budget and tax levy. This included the rent and all expense of operating the rest room for the entire year, although the existing lease had only five months of the new year to run. At the November election a new slate of city officials was elected, to take office on January 7, 1936. The outgoing officers continued the negotiations, and on the evening of January 6, 1936, at the last meeting before the expiration of their terms, the outgoing officers executed the lease in question for a term of ten years from January 1, 1936. The new lease provided that the remainder of the old lease be canceled and that the rental under the new lease should be

$130 per month, payable monthly in advance. The court made a finding that the amount of the rent was reasonable. Prior to the 1926 lease the rent was $175 per month. Under the 1926 lease it was $135 per month, and under the present lease $130 per month.

On January 7, 1936, at its first meeting, the new council rescinded by resolution the action taken by the old council in entering into the present lease. Notice of the action taken by the council was served upon plaintiffs. Defendant did not occupy the premises after the time fixed in the old lease for its expiration, June 1, 1936.

No claim of fraud or collusion is made in the answer, but it is claimed by defendant that the lease is null and void because executed in violation of the provision of the city charter which provides that no obligation of any kind shall be incurred or authorized for the payment of which there is not money available at the time of incurring and authorizing the same; that the lease executed by the old council, binding the city for ten years, tended to deprive the incoming council of its power to legislate and exercise the governmental functions of the defendant; that the city had no need for a public rest room, there being other facilities available for that purpose; that the rental is excessive; and that the action of the council, and the lease, were contrary to public policy.

There was no finding of fraud, and there could not well be in view of the fact that such an issue was not raised by the pleadings and proof. There was a finding that there was no need for the city to rent the building for rest room purposes on January 6, 1936. Although the issue is not raised by the pleadings and the proof, the court made a finding that the action of the city council in attempting to enter into the lease was unreasonable, arbitrary, an abuse of discretion, and not in the best interests of the city or its inhabitants. It also made a finding that it appears from the evidence that the building was to be used for governmental functions. As a conclusion of law the court found that plaintiffs were not entitled to recover.

■ Defendant operates under a home rule charter by the provisions of which it has the power to acquire by purchase, condemnation, or otherwise, and to establish, maintain, equip, own, and

operate, among other things, public toilets and rest rooms, § 70(1), and to acquire by purchase, condemnation, or otherwise, such lands or other property as may be necessary to provide for and effectuate any public purpose. § 70(4). The power to acquire by purchase or otherwise may be exercised by making a lease. The greater includes the lesser. 3 Dillon, Municipal Corporations (5 ed.) p. 1593, § 997; 3 McQuillin, Municipal Corporations (2 ed.) § 1215; Davies v. City of New York, 83 N. Y. 207; Wade v. City of New Bern, 77 N. C. 460; City and County of San Francisco v. Boyle, 195 Cal. 426, 233 P. 965; Town of Beaver Dam v. Frings, 17 Wis. 409; Gilman v. City of Milwaukee, 31 Wis. 563; American Press v. City of St. Louis, 314 Mo. 288, 284 S. W. 482. In its memorandum the court below stated that the old lease still had six months to run at the time of the execution of the new lease and that the old city council was for that reason without authority to enter into a new lease. To hold that the council did not have the power to cancel the old lease and make a new one is to hold in effect that after a city has made a lease it has exhausted its power to deal with the subject matter, however advantageous or desirable it may be to enter into a new lease. The power to contract is not exhausted by entering into a contract. It is continuous in its nature and may be exerted to amend, correct, modify, or rescind contracts so as to secure to the municipality the same advantages as an individual or private corporation in respect to their contracts. Carson v. City of Dawson, 129 Minn. 453, 152 N. W. 842; 2 Dillon, Municipal Corporations (5 ed.) p. 1235, § 820. In Admiral Realty Co. v. City of New York, 206 N. Y. 110, at p. 130, 99 E. 241, 246, Ann. Cas. 1914A, 1054, it is held that making a new contract to supersede an existent one "is an ordinary incident to the power to make a contract," and "the power to make a contract begets the right to procure its amendment or rescission." The city had the power to enter into a lease for the rest room and before the lease expired to enter into a new lease which covered in part the unexpired term of the old lease.

■ The old city council had the power to make a new lease on the last day that the members thereof were in office. A municipal-

ity is continuous. While the personnel and membership of its council or governing board changes, the corporation continues unchanged, and a contract entered into by its council is the contract of the corporation. The city council may exercise its power throughout its term. It can make no difference, so far as the question of power is concerned, whether it be exercised on the first or the last day of the term. Manley v. Scott, 108 Minn. 142, 121 N. W. 628, 29 L.R.A.(N.S.) 652, and note. See Town of Tempe v. Corbell, 17 Ariz. 1, 147 P. 745, L. R. A. 1915E, 581; Dubuque Female College v. Dist. Twp. of City of Dubuque, 13 Iowa, 555.

■ The finding that the action of the council was unreasonable, arbitrary, and an abuse of discretion and not in the best interests of the city and its inhabitants is not germane to the issues and proof and is entirely without foundation. Inasmuch as there is no allegation or finding of fraud, the wisdom and policy of the lease cannot be considered by the court. The council acted under powers conferred upon it by the city charter, and its action cannot be controlled by the courts. Matters of expediency and necessity relating to local government are committed to the governing body of municipalities and are not subject to judicial control, supervision, or correction. 19 R. C. L. p. 904, § 302. In 1 Dillon, Municipal Corporations (5 ed.) §§ 242, 243, the rule is thus stated:

"Where the law or charter confers upon the city council, or local legislature, power to determine upon the expediency or necessity of measures relating to the local government, their judgment upon matters thus committed to them, while acting within the scope of their authority, cannot be controlled by the courts. In such case the decision of the proper corporate body is, in the absence of fraud, final and conclusive, unless they transcend their powers. Thus, for example, if the city has power to grade streets, the courts will not inquire into the necessity of the exercise of it, or the refusal to exercise it, nor whether a particular grade adopted, or a particular mode of executing the grade, is judicious. So, if a city has power to build a market house, the courts cannot inquire into the size and fitness of the building for the object intended. So, in the absence

of fraud, the court refused to interfere by injunction with the action of the city council in agreeing to rent a room for city purposes for twenty years and to pay for the same in advance. * * *

"So, also, where, by its charter, a municipal corporation is empowered, if it deems the public welfare or convenience requires it, to open streets or make public improvements thereon, its determination, whether wise or unwise, cannot be judicially revised or corrected. On the ground that it is the province of the municipal authorities, and not of the judicial tribunals, to determine what improvements shall be made in the streets and highways of the corporation, * * *."

If the court can declare the instant lease void, it can do likewise with respect to any purchase made by the city. If it finds that the purchase of a pick and shovel is unwise in its judgment, the court can set aside the transaction. These are matters for the decision and judgment of the council and not of the court.

The evidence affirmatively shows that the city council, in renewing the lease, executed an intention to make a new lease formed long prior to the election at which they were ousted. If the matter of the election and the fact that the term of the old council was about to expire were out of the case, it would not be claimed that the action of the council was not lawful and regular. The property had been under lease to the city continuously for over 14 years under four previous leases at higher rentals than that stipulated in the new lease. Cancellation of the remainder of the lease of March, 1925, and the execution of a new lease for ten years from June, 1926, involved similar action and was not questioned. In September, 1935, negotiations for this lease were started. In October the budget for 1936 was adopted, and included therein was the amount stated for the rent and upkeep of this property. It is reasonable to believe that the members of the old council at that time expected that the city would make a new lease at the old rental. If they had entered into the new lease before election instead of the day before their term expired, or if they had been reëlected, its validity would not be questioned. The fact that the

lease was made on the last day of their term in and of itself does not affect the character of their action or the reasonableness of the lease. The unreasonableness of the lease must be established by proof other than the time when it was executed.

The fact that the lease was to remain in force after the old council went out of office is no objection to it. If the council had exercised its powers to purchase this property or to acquire it by condemnation, the city would have become the owner in fee; but the council exercised the lesser power of acquiring a lease. Leases of property by municipal corporations are not invalid because the lease extends beyond the term of office of the officers negotiating the lease. 1 Dillon, Municipal Corporations (5 ed.) p. 459, § 243. This court has upheld contracts extending beyond terms of officers making them and of longer duration than the instant lease. In State ex rel. St. Paul Gaslight Co. v. McCardy, 62 Minn. 509, 64 N. W. 1133, a contract for lighting a courthouse and city hall for three years was upheld; Reed v. City of Anoka, 85 Minn. 294, 88 N. W. 981 (contract for city water and hydrants for period of 31 years) ; Northern States Power Co. v. City of Granite Falls, 186 Minn. 209, 242 N. W. 714 (contract for purchase of electricity for period of 15 years). Similar contracts have generally been upheld. Moses v. Risdon, 46 Iowa, 251 (lease for 20 years) ; American Press v. City of St. Louis, 314 Mo. 288, 284 S. W. 482 (lease for two years with option to renew for six years) ; McBean v. City of Fresno, 112 Cal. 159, 44 P. 358, 31 L. R. A. 794, 53 A. S. R. 191 (contract for disposal of sewage for five years) ; Garrison v. City of Chicago, 7 Bissell, 480 (contract for supply of gas to city for ten years) ; see Spaulding v. City of Lowell, 23 Pick. (Mass.) 71; Schanck v. Mayor, 69 N. Y. 444; Gale v. Village of Kalamazoo, 23 Mich. 344, 9 Am. R. 80; 3 Dillon, Municipal Corporations (5 ed.) p. 2151, § 1307.

The manner in which a power shall be exercised and the terms of any contract which the municipality may enter into, including the number of years during which it is to continue, rest in the discretion of the council. Municipal authorities have a large discretion in such matters, and courts will not declare such a contract

unreasonable unless it is manifestly so. 4 Dunnell, Minn. Dig. (2 ed.) §§ 6697, 6700; 3 Dillon, Municipal Corporations (5 ed.) p. 2151, § 1307.

■ The finding that there was no real need for the city to rent a building for rest room purposes is not within the province of the court. Authorities *supra* under subdivision 3. Nor is it sustained by the evidence. The only witness on this point is one of the present city councilmen, and his testimony is of such a character as not to justify the finding. He testified that there were other toilet and rest room facilities available. He gave no testimony at all relative to the need for a tourist waiting room, office rooms, or other lawful purposes to which the city might devote this property. With respect to rest room facilities, he stated that the matter of necessity is one of individual judgment and conceded that some people might think that this rest room was necessary and desirable and others might think otherwise. His testimony is altogether lacking in conclusiveness. It well illustrates why courts should not substitute their judgment for the judgment of city officials. The law commits such matters to the determination of the city council. In City of Biddeford v. Yates, 104 Me. 506, 72 A. 335, 339, 15 Ann. Cas. 1091, the court had occasion to refer to this precise matter in a case involving a lease given by the city of property owned by it to a private individual. There had been an election, and the old officers executed the lease before the new officers qualified. The new officers in that case, as in this, disapproved the lease given by their predecessors. First the court pointed out that, while the personnel may have been different, the city council under which the lease took effect was precisely the same tribunal under the charter and ordinances that executed the lease. In commenting on this matter the court said [104 Me. 515]:

"While one city government composed of one set of individuals might, upon a given question, do precisely the reverse of another city government, composed of a different set of individuals, yet what the individuals of different city governments might do, can in no way affect the right of the tribunal as a city government to

act upon any measure properly before it. What the individuals may do, as a matter of opinion is one thing, but what the tribunal, as a perpetual body is empowered to do as a matter of authority, is quite another thing."

Many similar expressions are to be found in the books. See Northern States Power Co. v. City of Granite Falls, 186 Minn. 212, 242 N. W. 714. This was a matter for the council and not for the court to determine. In this particular case the court not only assumed to determine matters not within its province but it also made an erroneous finding, not sustained by the evidence.

■ The lease is not illegal and void because there was no advertisement for bids by the city for the leasing of this property. The city charter provides that the city shall advertise for bids for all contracts involving the expenditure of more than $250 for commodities or services, which are defined to include all labor, materials, and other property, lighting, and other services and all local and public improvements. (Ch. 10, § 90.) A lease of real property by the city is not comprehended within any of the terms used. Davies v. City of New York, 83 N. Y. 207; Voelcker v. Schnell, 166 N. Y. S. 420, 424; 44 C. J. p. 103, § 2189, note 98; 3 Dillon, Municipal Corporations (5 ed.) p. 1593, § 997, note 2. The object of requiring bids is to insure economy and to exclude favoritism and corruption in the furnishing of labor, services, property, and materials for the use of the city. But a requirement for bids is unavailing and futile in cases in which the city desires to obtain a particular property or particular services. Such property is not the subject of competitive bidding, and if the city desires to acquire it it must do so by purchase or condemnation. The reason for the rule renders it inapplicable in such cases. 2 Dillon, Municipal Corporations (5 ed.) p. 1199, § 802. The author cites as examples the acquisition of land in a particular locality for public market house, engine house, or other public building; professional services of an engineer, physician, lawyer, artist, etc. These provisions of the Eveleth city charter have no application to this lease. The city council had the power to enter into a lease for these premises without advertising for bids.

■ The lease does not create an obligation for the payment of which there was not money available at the time of incurring or authorizing the same, contrary to the city charter. Ch. 9, § 80. The obligation prohibited is a present liability or duty to pay money. It limits the power of the city council to contract debts. Walla Walla City v. Walla Walla Water Co. 172 U. S. 1, 19 S. Ct. 77, 43 L. ed. 341. The court made no findings with respect to this matter. The evidence is not clear. In the budget and tax levy for the year 1936 there was included the amount of $4,225, which admittedly is sufficient to cover the rent to be paid and the expense of maintaining the rest room during the year 1936. It is claimed by defendant that the lease created an obligation *in praesenti* on the part of the city to pay $15,600 rent and that such sum was not in the city treasury in January, 1936. There is nothing in the evidence or the findings to show that the city did not then have the money. It is presumed that the contract is valid and that all things requisite to its validity exist. Ingelson v. Olson, 199 Minn. 422, 272 N. W. 270; Reed v. City of Anoka, 85 Minn. 294, 88 N. W. 981.

The contention that the lease creates an obligation on the part of the city to pay $15,600, the entire rent for the full term of ten years, is based on the decision of this court in Kiichli v. Minnesota Brush Elec. Co. 58 Minn. 418, 59 N. W. 1088, 49 A. S. R. 523, in which it was held that an agreement of the city of Minneapolis to pay an electric company the contract price for furnishing electric street lighting for a period of five years, payable in five annual instalments, created a present liability for the entire amount stipulated in the contract. We held that liability was incurred for the entire contract price when the contract was made. The Kiichli case did not involve a lease; hence it was not determined by the law applicable to cases involving leases. This case involves a lease and must be determined by the law peculiar to leases. It is not permissible to consider what the result would be if the lease were considered merely as a contract so far as concerns the unaccrued rents. See Viterbo v. Friedlander, 120 U. S. 707, 7 S. Ct. 962, 30 L. ed. 776; 3 Williston, Contracts (Rev. ed.) § 890; In re Barnett (C. C. A.) 12 F. (2d) 73; 21 Cal. L. Rev. 561, 562-563; 33 Colo. L.

Rev. 213, 216-217. Courts accept the established law applicable to leases. Illustrative of the binding effect of the settled law in this respect is Gardiner v. Butler & Co. 245 U. S. 603, 605, 38 S. Ct. 214, 62 L. ed. 505, in which Mr. Justice Holmes stated that even though there were "plausible analogies" for a contrary contention, the law of leases must be applied, in the following apt expression: "But the law as to leases is not a matter of logic *in vacuo;* it is a matter of history that has not forgotten Lord Coke." The law of leases has become so well settled as a part of the law of the land that this court and other courts have applied that law, even though the facts in some cases may have suggested that other rules of law might be more appropriately applied in the light of present day considerations if the courts were free to consider the questions without respect to the rules settled and determined by precedent. Rules so well settled should be overthrown only by legislation.

Rent is a sum stipulated to be paid for the use and enjoyment of land. The consideration for the rent is the occupation of the land. In re Roth, 104 C. C. A. 649, 181 F. 667, 31 L.R.A.(N.S.) 270; 16 R. C. L. p. 909, § 416. Rent is not a debt or liability, in the generally accepted meaning of those terms, while it has yet to accrue. There is no obligation to pay until the rent is due according to the terms of the lease. Rent to be paid in the future is not a debt or liability for the recovery of which a present action will lie. The duty to pay rent may never arise by the happening of events which by the laws of property relieve a tenant from payment. Because the obligation to pay rent may never arise, it is regarded as contingent and not an absolute liability. This rule was adopted by this court in Wilder v. Peabody, 37 Minn. 248, 33 N. W. 852, in which it was held that rent accruing under a lease after an assignment for the benefit of creditors by the lessee under the insolvent law is not a provable debt or claim against the estate of the insolvent lessee. In that case Mr. Justice Mitchell said [37 Minn. 249]:

"But rent does not accrue to the lessor as a debt or claim, unless payable in advance, until the lessee has enjoyed the use of the

premises. It may never become due, for the lessee may be evicted, or the premises become untenable. It is neither *debitum* nor *solvendum*. It is not an existing demand, the cause of action on which depends on a contingency, but the very existence of the demand depends on a contingency. It is wholly uncertain whether the lease will ever give rise to an actual debt or liability. There is no provision in the statute for proving or allowing any such mere contingency as a claim against the estate of an insolvent."

In State v. Royal Mineral Assn. 132 Minn. 232, 236, 156 N. W. 128, 130, Ann. Cas. 1918A, 145, it was held that unaccrued rents are not personal property, but, on the contrary, are incorporeal hereditaments and part of the land. They were held not taxable as credits under the moneys and credits law which defined a credit as meaning and including "every claim and demand for money \* \* \* or sum of money receivable at stated periods, due or to become due, and all claims and demands secured by deed or mortgage, due or to become due." It was held that the statute applied to personal property and not to real estate and therefore the unaccrued rents were not taxable as credits though they were moneys to become due at stated periods in the future. In Crowley v. Potts, 180 Minn. 234, 240, 230 N. W. 645, it was held that rent accruing subsequent to the time when a stockholder transferred his stock was not "an existent debt" at the time of the transfer for the payment of which the transferrer could be assessed for stockholder's liability. The cases are reviewed in the opinion. In In re Estate of Wishnick, 199 Minn. 153, 271 N. W. 244, it was held that unaccrued rent was not provable as a claim upon debt against the estate of a decedent in probate court. Certainly we have not forgotten Lord Coke.

Our rule is in accord with the authorities. This question has been determined under a great variety of circumstances. For example, it has been held that garnishment and attachment will not lie by a creditor of the lessor to attach future rents, Randall v. Rich, 11 Mass. 493; Bordman v. Osborn, 40 Mass. 295; that a claim for future rent is not provable as a debt in insolvency proceedings, Deane v. Caldwell, 127 Mass. 242; nor in bankruptcy proceedings,

Manhattan Properties, Inc. v. Irving Tr. Co. 291 U. S. 320, 54 S. Ct. 385, 78 L. ed. 824, in which the English and American statutes and decisions are reviewed; Bosler v. Kuhn, 8 Watts & Serg. (Pa.) 183; In re Roth, *supra;* see 21 Cal. L. Rev. 561, 47 Harv. L. Rev. 488, 33 Colo. L. Rev. 213. Unaccrued rent to be paid under a lease does not create a present debt or liability. The covenants in the lease as to future rent do not incur or authorize an obligation to pay money prohibited by the city charter of Eveleth. The first month's rent was payable at the time the lease was signed and is excepted. See State v. Royal Mineral Assn., *supra.*

The weight of authority is that public service contracts calling for payment in instalments as the service is rendered do not create an indebtedness against the municipality until the service is performed, at which time the instalments fall due. 19 R. C. L. p. 983, § 279; 44 C. J. p. 1130, § 4063; 6 McQuillin, Municipal Corporations (2 ed.) §§ 2391, 2392; note, 37 L.R.A.(N.S.) 1063, *et seq.* This is the rule of the Supreme Court of the United States. Walla Walla City v. Walla Walla Water Co. 172 U. S. 1, 19 S. Ct. 77, 43 L. ed. 341. It has been followed in the great majority of cases. City of South Bend v. Reynolds, 155 Ind. 70, 57 N. E. 706, 49 L. R. A. 795; notes, 44 A. S. R. 240, 59 L. R. A. 610, 37 L.R.A.(N.S.) 1063. In the notes cited cases like the Kiichli case are distinguished upon the ground that the contracts there involved created an entire obligation to pay resulting in a present indebtedness. See 37 L.R.A.(N.S.) 1062(15), 1068(33). This distinction seems to have been recognized with respect to the Anoka water contract in the case of Anoka Water Works, E. L. & P. Co. v. City of Anoka (C. C.) 109 F. 580, which is decided largely upon the authority of the Walla Walla City v. Walla Walla Water Co. case, *supra,* notwithstanding the earlier case of Kiichli v. Minnesota Brush Elec. Co., *supra.* In Reed v. City of Anoka, *supra,* this court approved the rule of Anoka Water Works, E. L. & P. Co. v. City of Anoka (C. C.) 109 F. 580. The rule was applied recently in a case similar in this respect, Northern States Power Co. v. City of Granite Falls, 186 Minn. 209, 242 N. W. 714, in which it was held, at p. 214, that the Kiichli case was not applicable. By the holdings of this court in Reed v. City

of Anoka and Northern States Power Co. v. City of Granite Falls, the Kiichli case has lost much weight as an authority. It clearly does not apply to a lease of real property and is not in point.

Reversed and new trial granted.

MR. JUSTICE STONE took no part in the consideration or decision of this case.

[1]Reported in 274 N. W. 652.