**EMERALD ENTERPRISES, LTD., an Oklahoma limited partnership, Plaintiff/Appellant,**

v.

**CITY OF OKLAHOMA CITY, an Oklahoma municipal corporation, the Central Oklahoma Transportation and Parking Authority, an Oklahoma public trust, and S.M.J. Industries, Inc., an Oklahoma corporation, Defendants/Appellees.**

No. 87323.

Court of Civil Appeals of Oklahoma, Division No. 3.

Jan. 14, 1997.

Certiorari Denied April 2, 1997.

---

28

Tom M. Moore, Kornfeld, Franklin, Renegar & Randall, Oklahoma City, for Plaintiff/Appellant.

Daniel T. Brummitt, Municipal Counselor's Office, Oklahoma City, for Defendant/Appellee City of Oklahoma City.

Marsha D. Harrod, Municipal Counselor's Office, Oklahoma City, for Defendant/Appellee, Central Oklahoma Transportation and Parking Authority.

Robert N. Sheets, Phillips, McFall, McCaffrey, McVay & Murrah, P.C., Oklahoma City, for Defendant/Appellee, S.M.J. Industries, Inc.

## MEMORANDUM OPINION

GARRETT, Judge:

Emerald Enterprises, Ltd. (Appellant) sued the City of Oklahoma City (City), Central Oklahoma Transportation and Parking Authority (COTPA) and S.M.J. Industries, Inc. (SMJ), (collectively, Appellees), for a declaratory judgment, contending the City violated its City Charter when it purchased real property to relocate the COTPA bus maintenance facility without competitive bidding. Appellant also sought a permanent injunction to restrain the City from performing under the contract.

Appellees filed motions to dismiss Appellant's petition for failure to state a claim upon which relief can be granted, under 12 O.S. 1991 § 2012(B)(6). The trial court sustained the motions to dismiss as to all Appellees. The court specifically found the applicable provision of the Oklahoma City Charter, Art. IX, § 4,[1] is inapplicable to the acquisition of real estate and does not require competitive bidding. The court found

---

1. Art. IX, §. 4 of the city charter requiring competitive bidding provides in part:

   Except in the case of contracts for purchase of books, periodicals, pamphlets, manuscripts, all contracts pertaining to public improvements, maintenance of public property, and construction of whatever character involving an outlay and expenditure of City funds in excess of $7,500.00 and those for public printing, purchase of public printing, purchases of supplies and **all other contracts upon the part of the City of whatever character** involving an outlay and expenditure of City funds in excess of $2,500.00 shall be based upon specifications approved by the Council. **Such contracts** shall be entered into only after advertisement not less than one time in a daily newspaper published in the City, or in the official City publication, if any there be, inviting competitive bids; .... (Emphasis added).

Appellant's petition contained an incurable pleading defect which could not be remedied and dismissed Appellant's petition with prejudice. Appellant filed a Motion to Reconsider (Or For A New Trial), which was denied. This appeal followed.

For reversal, Appellant raises the following issues of error:

1. Whether the trial court erred when it determined that the city charter provision requiring competitive bidding on "all other contracts upon the part of the City of whatever character" does not apply to contracts for the purchase of real estate;

2. Whether the trial court erred when it determined that the city charter provision requiring competitive bidding on "all contracts pertaining to public improvements" does not apply to a contract for the acquisition of real property entered into for the express purpose of moving a facility in order to construct public improvements on the property vacated;

3. Whether the trial court denied Appellant due process and a fair hearing when it granted the motion to dismiss before Appellant had the opportunity to receive and respond to new matter raised in Appellees' reply brief filed in support of the motion to dismiss; and

4. Whether the trial court erred when it denied Appellant's motion to reconsider (or for new trial).

Appellant alleged in its amended petition the City owned land leased to COTPA for its mass transit operations and a bus maintenance facility, and that under the MAPS plan, it became necessary to relocate COTPA in order to construct a sports facility on that land. Appellant alleged it had contacted the City with a bid to sell its property consisting of 50 acres of undeveloped land located at S.E. 25th and High Streets, Oklahoma City, to COTPA for its bus facility. It offered to sell the property at $10,000.00 per acre and submitted cost estimates to the City for paving and building construction to make the land suitable for COTPA's purposes. Appellant alleged, however, that the City never responded to its offer, and property owned by Turner Brothers was bought at a price higher than Appellant's bid. Appellant alleged COTPA failed to follow Art. IX, § 4 of the City Charter, requiring competitive bidding for the purchase. It contends Turner Brothers' property was really bought with City funds because proceeds from the sale of COTPA's property to the City were used to purchase it. Appellant alleged the contract between City and COTPA and the contract between COTPA and Turner Brothers together constitute an agreement among City; COTPA and Turner for the City, as the real party in interest; and COTPA as the nominal party in interest, to acquire Turner Brothers' property with City funds.

Appellant alleged all taxpayers of the City have been injured by City's failure to obtain the lowest and best bid in the acquisition of the property and that Appellant was specifically injured by City's refusal to consider its bid under § 4.

In Appellees' motion to dismiss, they alleged: (1) case law provides that provisions such as Art. 9, § 4 do not require competitive bidding for acquiring real estate; (2) accepting Appellant's construction of the charter provision would render meaningless other provisions of the charter, i.e., Art. I, §§ 1, 5, which expressly grant to the City the power to acquire real estate; and (3) under the rule of *ejusdem generis,* the general wording of Art. IX, § 4 concerning "all other contracts upon the part of the City of whatever character" must be restricted to mean contracts analogous to or of the same general kind or class as those enumerated in the preceding specific wording of the section, which do not include real estate contracts.

First, City argued that case law in other states and one Oklahoma Court of Criminal Appeals case, *Ex parte Houston,* 93 Okla. Crim. 26, 224 P.2d 281 (1950), hold in line with the majority rule, as to the power of a municipality to acquire real estate without competitive bidding, which is in line with 64 Am.Jur.2d, *Public Works and Contracts,* § 45:

> Where the proper purpose of a contract is simply to acquire specific property, the principle of competitive bidding is said to be inapplicable. Thus, it has been held that a state is not required to submit to

competitive bidding in order to acquire title to property by agreement with the owner or by the exercise of the right of eminent domain.

Contracts for the renting of real property or the hire of chattels generally are not considered within provisions requiring contracts for work, supplies, or materials to be let upon competitive bidding.

Although factually distinguishable from the instant case, *Ex parte Houston,* supra, considered Art. IX, § 4 of the Oklahoma City Charter, the same provision at issue here. Although it is dicta, the Court of Criminal Appeals stated there are well recognized exceptions to competitive bidding provisions such as this. The Court stated, 224 P.2d at page 295:

And where there are statutory or charter provisions requiring competitive bidding, there are well recognized exceptions. For instance, contracts for renting of real property or the hire of chattels generally are not considered within provisions requiring contracts for work, supplies or materials to be let upon competitive bidding. *Ambrozich v. City of Eveleth,* 200 Minn. 473, 274 N.W. 635, 112 A.L.R. 269. Nor professional services of an engineer, physician, lawyer, artist, etc. The reason for the exception in the first instance is that the location of a particular structure may answer the needs of a municipality, where some other building might not; and where professional and personal services of a specialized nature are required, the municipality may better safeguard the public interest by negotiation rather than competitive bidding, because the low bidder might cause the municipality untold damage and loss. The problem is to contract with individuals who are best qualified to and who give promise of, best serving the interest of the municipality and the public.

Cited approvingly in *Ex parte Houston* is *Ambrozich v. City of Eveleth,* 200 Minn. 473, 274 N.W. 635 (1937). It considered whether the City had the power to lease real property for use as a public restroom without advertising for competitive bids. The Minnesota Supreme Court held the City of Eveleth did have the power under its charter which gave

it the power to, *inter alia,* "acquire by purchase, condemnation, or otherwise, such lands or other property as may be necessary to provide for and effectuate any public purpose, ... and the power to acquire by purchase or otherwise may be exercised by making a lease." 274 N.W. at 636. The Court stated 274 N.W. at 639:

The lease is not illegal and void because there was no advertisement for bids by the city for the leasing of this property. The city charter provides that the city shall advertise for bids for all contracts involving the expenditure of more than $250 for commodities or services, which are defined to include all labor, materials, and other property, lighting and other services, and all local and public improvements. Chapter 10, § 90. A lease of real property by the city is not comprehended within any of the terms used ... The object of requiring bids is to insure economy and to exclude favoritism and corruption in the furnishing of labor, services, property, and materials for the use of the city. **But a requirement for bids is unavailing and futile in cases in which the city desires to obtain a particular property or particular services. Such property is not the subject of competitive bidding, and if the city desires to acquire it, it must do so by purchase or condemnation.** The reason for the rule renders it inapplicable in such cases. 2 Dillon, Municipal Corporations, 1199, § 802. The author cites as examples the acquisition of land in a particular locality for public market house, engine house, or other public building; ... These provisions of the Eveleth city charter have no application to this lease. The city council had the power to enter into a lease for these premises without advertising for bids. (Emphasis added) (Citations omitted).

It should be noted that Art. IX, § 4 is found under Art. IX, **General Provisions.** However, Art. I, §§ 1 and 5, which gives the City the specific power to buy property, is found under the heading, **Organization and Powers,** in which specific grants of power are given to the City. Section 1 provides in part:

[T]he City of Oklahoma City ... shall have power ... to make contracts, to take and acquire property by purchase, condemnation or otherwise, and to hold, lease, trade, exchange, sell, mortgage, convey or otherwise dispose of any of its property, real or personal, within and without the limits of said City, and whether said property be held by The City in a proprietary or governmental capacity, and it shall have such other powers, rights, privileges, franchises and immunities as a regranted and conferred by any other parts of this Charter or by the Constitution and the laws of the State of Oklahoma.

Section 5, Acquisition of Property, provides:

Said City shall have power within and without its territorial limits and boundaries to construct, condemn and purchase, acquire, lease, improve, add to, maintain, and conduct and operate, in whole or in party, water works, including water pipe lines and pump stations, light plants, telephone systems, power plants, transportation systems, heating plants, incinerating and sewage disposal plants, airports, parks, playgrounds, cultural and recreational facilities, and any other public utilities or works or ways local in use, including all land and easements deemed necessary for such purposes, and everything required therefor for the use of said City and the inhabitants thereof, and any such systems, plants, property, works or ways, or any contracts in relation or connection therewith that may exist and which said City may desire to purchase, in whole or in part, may be purchased or acquired, in whole or in part, by said City, which may enforce such purchase by proceedings at law or in equity by right of eminent domain, and said City shall have the power to issue bonds upon the vote of the electors as may be authorized or limited by the Constitution and laws of the State at any special or general election in any amount necessary to carry out any of said powers or purposes, said amount being alone limited by the Constitution and the laws of the State of Oklahoma, and by other provisions of this Charter....

A petition should never be dismissed unless it appears beyond a doubt the plaintiff can prove no set of facts in support of the claim for which relief is sought. *Niemeyer v. United States Fidelity and Guaranty Co.,* 789 P.2d 1318 (Okl.1990). In the instant case, Appellant seeks relief for actions taken by City which City had a specific grant of authority to take. It bought *specific* property which it found suitable for its needs. The rule requiring competitive bidding, on the other hand, entertains bids for unspecific goods and services to arrive at the lowest and best bid. Real property for sale or lease, however, which could be obtained at a lower price could be totally unsuitable for the City's purpose. A requirement for competitive bidding for the purchase of real estate could completely hinder the progress of a project, such as MAPS, and prevent City's compliance with its contracts. As a matter of law, City was within its power to contract with COTPA and Turner Brothers without competitive bidding under the specific powers granted to it under Art. 1, §§ 1, 5, as opposed to the general provisions of Art. IX, § 4. The trial court correctly sustained the motions to dismiss of the Appellees.

AFFIRMED.

JONES, P.J., concurs.

ADAMS, C.J., concurs in result.