### CITY OF BIDDEFORD *vs.* FREDERICK YATES.

### York.    Opinion December 14, 1908.

*Municipal Corporations.    City Government.    Delegated Authority.    Authority*
*to Make a Lease.    Same May be Delegated to a Committee.*
*In Futuro Lease Valid.*

While the personnel of a city government may change, yet the tribunal itself is a continuous body.

While one city government composed of one set of individuals might, upon a given question, do precisely the reverse of another city government, composed of a different set of individuals, yet, what the individuals of different city governments might do, can in no way effect the right of the tribunal as a city government, to act upon any measure properly before it.

A municipal government represented by its city council should be regarded as a business institution with reference to those transactions or matters permitted by the terms of its charter, and when not limited to a prescribed method it should be permitted to act with the same business foresight that is accorded to other business institutions.

Whether a city government can delegate authority to a committee to let city property, depends entirely upon whether the delegation of such authority invests the committee with judicial or ministerial powers.

Functions which are purely executive, administrative or ministerial may be delegated to a committee. It is only such functions as are governmental, legislative or discretionary which cannot be delegated.

A purely ministerial duty is one as to which nothing is left to discretion. Judicial acts involve the exercise of discretionary power or judgment. Judicial acts are not confined to the jurisdiction of judges.

The plaintiff city, on May 24, 1904, was the owner of a certain city building containing a hall known as the opera house. On the same day the city council by its committee on public property made and delivered to the defendant an instrument, purporting to be a lease of the hall, expiring June first, 1907. On February 20, 1907, another city council by the same committee made a second instrument purporting to be a lease of the same hall to the defendant to take effect, in futuro, at the expiration of the first lease, to wit, June 1, 1907, for a term of three years from the latter date. Between February 20, 1907, the date of the second lease, and June first, 1907, when it was to take effect, the term of office of the city officials, under whom this latter lease was made, had expired, and on the third Monday of March, a new city government had been inaugurated. Under the facts, which are stated in the opinion, and the city charter and ordinances the parts of which material to the case are also stated in the opinion,

*Held:* (1) That the city council had authority to authorize a lease of the hall. (2) That the city council had authority to execute and deliver a lease under one city government to take effect in futuro, under another city government. (3) That the city council could delegate authority to its committee on public property to make and execute such lease.

On report.    Judgment for defendant.

Trespass quare clausum alleging that the defendant with force and arms broke and entered a certain close belonging to the plaintiff city.    Plea, the general issue with a brief statement alleging in substance that during the time mentioned in the writ the defendant was legally in possession of the premises described in the writ, under and by virtue of a certain lease of the premises given to the defendant by the plaintiff city, and that under said lease the defendant had a legal right to do all the things which he did do.

When this action came on for trial, an agreed statement of facts was filed and the case was then reported to the Law Court with the stipulation that "upon so much of the evidence as is legally admissible the court is to enter such judgment as the legal rights of the parties require."

The case is stated in the opinion.

*Robert B. Seidel*, City Solicitor, *and N. B. Walker*, for plaintiff.
*Cleaves, Waterhouse & Emery*, for defendant.

SITTING:    EMERY, C. J., WHITEHOUSE, SAVAGE, PEABODY, SPEAR, BIRD, JJ.

SPEAR, J.    This is an action of trespass involving the validity of a lease of the plaintiff to the defendant.    There is no material dispute upon the facts.    The locus in quo is the opera house, so called, embracing the hall in the city building and used for the purpose of giving plays, operas, etc., together with all the rooms and appurtenances belonging to and connected with the hall.    On May 24, 1904, the plaintiff was the owner of the hall and appurtenances.    On the same day the city council by its committee on public property made and delivered to the defendant an instrument, purporting to be a lease of the hall, expiring June first, 1907.    On February 20, 1907, another city council by the same committee

made a second instrument purporting to be a lease of the same hall to take effect, in futuro, at the expiration of the first lease, to wit: June 1, 1907, for a term of three years from the latter date. Between February 20, 1907, the date of the second lease, and June first, 1907, when it was to take effect, the term of office of the city officials, under whom this lease was made, had expired, and on the third Monday of March, a new city government had been inaugurated.

On the 10th day of June, the city council passed the following order: "Ordered, that the city solicitor be, and hereby is, authorized to obtain possession of the opera house and to adopt any proceedings that he may deem necessary therefor, including the institution and prosecution of any action at law or equity."

On the 23rd day of August, 1907, the city solicitor, whose official capacity is admitted, took physical possession of the leased premises without the knowledge or consent of the lessee, for the express purpose of excluding him therefrom, and notified the defendant of his assumption of possession and the purpose thereof and to abstain from any interference therewith. On the 24th day of August, Yates, the lessee, demanded of the city solicitor permission to enter, without being obliged to break in, claiming a right of occupancy under the instrument purporting to be a lease dated Feb. 20, 1907. Being refused admission, he forcibly entered, and took possession of the hall.

This was the only public hall owned by the city of Biddeford from May 1, 1904, to the date of the plaintiff's writ. The charter of the city of Biddeford contains the following clause: "The city council shall have the care and superintendence of city buildings and the custody and management of all such property, with power to let or sell what may be legally let or sold." Under the city charter admitted to have been duly accepted, authorizing the establishment of by-laws and ordinances for the government of the city, was promulgated in 1887, the following ordinance:

"Chapter 15, City Building. Sec. 1. The committee on public property shall have the care and custody of such building and its appurtenances, and all the alterations and repairs thereof.

Sec. 2.   The said committee are authorized to lease any part of said building not already under lease or appropriated to any of the branches of the city government for any period not exceeding the term of three years, and upon such terms and conditions as they may deem expedient, subject, however, to the approval of the mayor and aldermen."

During the period covering both the first and the second alleged lease, the following joint rule was passed both by the city council of 1904 and that of 1907 :   "Rule 1.   At the commencement of the municipal year the following joint standing .committees shall be appointed by the mayor unless otherwise ordered by the respective boards, namely :   Committee on public property  .  .  .  .  to consist of the mayor, one alderman and three members of the common council."   A committee thus appointed negotiated the terms and executed the leases above referred to both of which were approved by the mayor and a majority of the aldermen of the city. At the time the above leases were executed and delivered to Yates, that part of the city building known as the opera house was not appropriated to the use of any of the branches of the city government nor leased to any other person.   The defendant fulfilled all the stipulations and conditions contained in the first lease.   He had also complied with all the requirements of the second lease so far forth as he could, the city having refused to accept payment of rent and having notified the defendant that it would not in the future accept rent.

In addition to the admitted facts, the plaintiff claims that the second lease was made to usurp the powers of the administration then about to be elected and was given for a grossly inadequate consideration, and was thereby fraudulent.   As the evidence does not sustain the allegation of fraud, the political aspect of the case disappears and we feel authorized to consider it only upon the admitted facts.

These in our opinion involve simply a question of power on the part of the city government.

1st.   Could the city council itself authorize a lease of this property ?

2nd.   If so, could it delegate its powers to a committee to effectuate its purpose?

3rd.   If yes, could the city council execute and deliver a lease under one city government to take effect, in futuro, under another?

Plaintiff admits the authority of the city government to lease the opera house, if of that species of city property that "may be legally let." But the city claims that the property covered by the second lease was "already under lease" and therefore within the exception of the ordinance, ch. 15, sec. 2.   We think this position untenable. The second lease did not take effect until after the expiration of the term of the first one, and therefore cannot be said, in the sense in which the ordinance should be construed, to cover property, "already under lease." The interpretation of this phrase as claimed by the plaintiff would prevent the city from renewing a lease even a day before it expired. Such construction is contrary to all business methods and should not be established unless the language of the ordinance expressly requires it. The phraseology does not require it, but rather its usual and ordinary meaning, the one naturally suggested is, that the city should not execute two leases covering the same property for the same period of time. If the ordinance was intended to mean any more than this, it could easily have been made to say so, and if the construction claimed by the plaintiff had been in the mind of the legislature, it would have said so. It would never have left so important and unusual a provision, if intended to mean what the plaintiff claims, to be established by the uncertain interpretation permissible by the language employed.

Again the plaintiff contends that the premises let were public property, and could be rented only for public purposes, *Thorndike* v. *Camden*, 82 Maine, 39, *Goss* v. *Greenleaf*, 98 Maine, 436, and could be used for private purposes when not needed for public use, *Reynolds* v. *Waterville*, 92 Maine, dissenting opinion, page 317, and cases cited, and that under the leases in question the public use was made subservient to the private use. The agreed statement does not furnish any evidence of this contention, and so far as it goes, tends to show the reverse, it being admitted that the part of the city building known as the opera house, was not appropriated

to the use of the city, and was reserved for memorial day, for the graduation exercises of the high school and necessary rehearsals therefor.  The lessee, was also required to let the hall, when not otherwise engaged in good faith, on the payment of running expenses for any public purpose upon application by the mayor, to any political body in the city at the request of the chairman of respective city committees, and to any established church in the city one day in each year to each such church.   It appears that the opera house was subject to all these public uses free from any charge except the running expenses.   These would have to be paid by some one, whether the city or the lessee was in control of the hall.

Our conclusion is that under section 4 of the charter which provides that the city council shall have "power to let or sell what may be legally let or sold," the first question should be answered in the affirmative.   We need not look beyond the city charter for authority to exercise this power on the part of the city as the charter is an act of the legislature and the section under consideration violates no provision of the constitution.

Whether the city government could delegate authority to a committee to let city property, depends entirely upon whether the delegation of such authority invested the committee with judicial or ministerial powers.   "Functions which are purely executive, administrative or ministerial may be delegated to a committee.   It is only such functions as are governmental, legislative or discretionary which cannot be delegated."   A. & E. Encyc. of Law, Vol. 20, page 1218. These duties may be simplified by classing them under the head of ministerial and judicial functions as the act of every public official is either ministerial or judicial.   *People* v. *Jerome*, 73 N. Y. Supp. 306.   A purely ministerial duty is one as to which nothing is left to discretion.   Judicial acts involve the exercise of discretionary power or judgment.   Judicial acts are not confined to the jurisdiction of judges.

No question is raised as to the authority of the city council to appoint a committee on public property, and none could be raised, provided they invested the committee with ministerial powers only. Hence the issue here presented is:   "Did the ordinances, under

which the committee acted, confer upon it ministerial authority only, or did it go further and clothe it with judicial powers?

To determine this issue, let us analyze the ordinance in question and discover just what powers it did confer upon the committee on public property. The legislature in granting the charter invested the committee with power to let "what may be legally let." The ordinance authorized the committee to lease any part of the building not already under lease or appropriated to the use of the city for any period not exceeding three years. It has already been determined that the lease embraced only what might be "legally let." So far the authority of the ordinance comports with that of the charter. The substance of the act conferred by the charter was the right to lease. The appointment of a committee by an ordinance was a proper and convenient way to carry out the details of the right conferred. Without any ordinance at all, the city council could have let the hall. The charter so provided. The ordinance therefore was made, as all ordinances are, for the purpose of prescribing a permanent method of transacting the particular business involved. Therefore the language of the ordinance that the committee may lease "upon such terms and conditions as they may deem expedient" involves simply those ministerial acts necessary to perform the act of leasing. In the light of the context which determines that a lease may be made, what shall be let and the term of the lease, this clause seems to have been used for the purpose of authorizing the committee to negotiate the various details which might arise in connection with the transaction involved. Those things which it would be impossible for an ordinance to prescribe in detail were left to the action of the committee. An illustration of this point is found in the present case where the specifications, submitted by the lessee prescribing various things which he stipulated to do, embrace three full pages, and from twenty to thirty different items.

This interpretation seems to be fully borne out in *Gillett* v. *Logan County et al.*, 67 Ill. 256.. In this case the Board of Supervisors of the county authorized three of their own number, who had been appointed for the purpose of employing counsel to defend the interest of the county, "to use their discretion in employing such

further agents or assistants as might, to them, seem expedient, for
the purpose of defending the interest of the county  .   .   .   .
the committee being empowered to contract with such agents or
assistants." The court say : "The first ground relied on in support
of the bill is, that the foregoing resolution was illegal ; the Board
of Supervisors had no right to delegate to a committee such power
as was given by the resolution," and in answer to this contention
hold, "That the duties of a committee although they might include
the making of contracts, were merely ministerial, which they might
properly be appointed to perform as recognized in *City of Alton* v.
*Mullcdy*, 21 Ill. 76 ; *McClaughry* v. *Hancock County*, 46 Ill.
356. In speaking of the impracticability of the Board of County
Commissioners sitting in session to carry out all the details of a
contract, which applies with equal force to the action of a city
council in a similar case, the court further add :  "The position
taken by the appellant involves the absurd consequence that this
Board of Supervisors, composed of nineteen members, should have
been kept in constant session during the progress of this protracted
investigation, in order that they might, from day to day, as required,
make bargains, as a body, for each item of service and expense
incurred. It was unnecessary ; they might act by a committee
appointed, as in the present mode."

The right of the city council to delegate its authority to a com-
mittee to perform acts which the council itself might legally do,
was raised in *Hitchcock* v. *Galveston*, 96 U. S. 341, in which the
court hold :  "If the city council had lawful authority to contract
the sidewalks, involved in it was the right to direct the mayor, and
the chairman on streets and alleys, to make a contract on behalf of
the city for doing the work. We spend no time in vindicating this
proposition. It is true, the city council could not delegate all the
power conferred upon it by the legislature, but like every other
corporation, it could do its ministerial work by agents. Nothing
more was done in this case."

This case also clearly determines that when a city council is
authorized to make a contract, it can appoint a committee to negoti-
ate the details. To the same effect is *Han. & St. Jo. R. R. Co.*

v. *Marion County*, 36 Mo. 296, in which it was contended by the defendant that the county court was the only agent authorized by law to issue instruments in payment to subscribers for stock and that the instruments were not issued by the court, but by certain Justices appointed by the court and that their act was not binding on the defendant; that is, that the county court could not delegate its authority to the persons named. But the appellate court held otherwise, saying: "When the legislature empowered the county court to subscribe stock to the railroad company, it also clothed it with the means which might be convenient for making its action effectual. The substantive act was the taking of the stock."

To the same effect also is *Collins* v. *Holyoke*, 146 Mass. 298, where the court say: "It is true as contended by the petitioner that the mayor and aldermen could not delegate the authority given them by the public statutes, Ch. 50; sec. 1, to lay and make common sewers. But no suggestion is made that the sewer was not legally laid, and it is only objected that it was "built under the direction and supervision of a committee composed of four members of the common council and three aldermen." But this was done by the order of the mayor and aldermen. The statute which gave them authority to make the sewers did not preclude them from employing agents to supervise and direct the work." Hence it appears from this opinion that the substance of the thing which could not be delegated was the laying out of the sewer, and not the details involved in its construction, some of which must necessarily have embraced the negotiating of contracts.

The third objection raised by the plaintiff to the legality of the lease is based upon the fact that one city council made the lease to take effect, in futuro, under another.

But it must be observed that, while the personnel may have been different, the city council under which the lease took effect was precisely the same tribunal under the charter and the ordinances that executed the lease. The plaintiff, however, contends that the fact of an election between the execution of the lease and the beginning of its term, involving a possible change in the personnel of the new city council, made the attempt to execute a lease, to thus take effect,

an invasion of the prerogatives of the new board. But we are unable to discover any substantial reason in support of this contention. While the personnel of a city government may change, the tribunal itself is a continuous body. As was said in *Collins* v. *Holyoke*, supra: "The membership of the defendant board is not the same as when the assessment in question was made. But while its members change from time to time, the Board itself as a tribunal is continuously the same." See also *Fairbanks* v. *Fitchburg*, 132 Mass. 42. While one city government composed of one set of individuals might, upon a given question, do precisely the reverse of another city government, composed of a different set of individuals, yet, what the individuals of different city governments might do, can in no way affect the right of the tribunal as a city government to act upon any measure properly before it. What the individuals may do, as a matter of opinion is one thing, but what the tribunal, a perpetual body is empowered to do as a matter of authority, is quite another thing. It appears to us that the logic of the plaintiff's contention tends to limit a city council to action with respect to such matters only as are to go into effect under its own administration. Such limitation would segregate a municipal government from all other corporations and business institutions, in the methods employed for the transaction of business, and might it seems to us prove highly detrimental. A municipal government represented by its city council should be regarded as a business institution with reference to those transactions or matters permitted by the terms of its charter. When not limited to a prescribed method it should be permitted to act with the same business foresight that is accorded to other business institutions. A corporation or individual dealing in the letting of property might find it of the highest importance to make a lease today to take effect months or even years hence. They might find it equally detrimental to be limited in their power to thus anticipate the future. This idea is so apparent as a business proposition as to become self evident.

We have seen that the city council itself was empowered to make the lease in question and could delegate authority to a committee

to negotiate its terms.    We are therefore of the opinion that a lease thus legally executed is not void from the fact that it is made by one city council to take effect, in futuro, under another.

*Judgment for the defendant.*