MEIER, Appellant, vs. CITY OF MADISON and others, Respondents.

*May 1—June 6, 1950.*

Hughes, J., dissents.

178

For the appellant there was a brief by *Ela, Christianson & Ela* of Madison, and oral argument by *Walter P. Ela.*

For the respondents there was a brief by *Harold E. Hanson,* city attorney, for the city of Madison, John E. Coyne, Leonard G. Howell, and A. W. Bareis, and *Schubring, Ryan, Petersen & Sutherland* of Madison, for the Madison General Hospital Association, and oral argument by *R. J. Sutherland* and *Floyd A. Brynelson* of Madison.

GEHL, J. The city has proceeded under sec. 66.067, Stats., which provides:

"For the purpose of financing necessary public-works projects whether or not under [the National Industrial Recovery Act], . . . hospitals, and any and all other necessary public-works projects . . . undertaken . . . by any . . . municipality shall be deemed public utilities within the meaning of section 66.066, and any . . . municipality may finance such public utilities in accordance with the provisions of and in the manner provided in section 66.066. For the purposes of such financing, rentals and fees shall be considered as revenue. Any indebtedness created pursuant to this section shall not be considered an indebtedness of such . . . municipality and shall not be included in arriving at the constitutional five per cent debt limitation."

The plaintiff contends that in the application of sec. 66.067, Stats., all of the provisions of sec. 66.066 must be complied with, specifically that failure to have complied with subs. (2) (c) to (2) (f) renders the bonds invalid. They provide:

"(c) As accurately as possible in advance, said board or council shall by ordinance fix and determine: ·

"1. The proportion of the revenues of such public utility which shall be necessary for the reasonable and proper operation and maintenance thereof;

"2. The proportion of the said revenues which shall be set aside as a proper and adequate depreciation fund; and

"3. The proportion of the said revenues which shall be set aside and applied to the payment of the principal and interest of the bonds herein authorized and shall set the same aside in separate funds.

"At any time after one year's operation, the council or board may recompute the proportion of the revenues which shall be assignable as provided above based upon the experience of operation or upon the basis of further financing.

"(d) The proportion set aside to the depreciation fund shall be expended in making good depreciation either in said public utility or in new constructions, extensions, or additions. Any accumulations of such depreciation fund may be invested, and if invested, the income from the investment shall be carried in the depreciation fund.

"(e) The proportion which shall be set aside for the payment of the principal and interest of the bonds herein authorized shall from month to month as the same shall accrue and be received, be set apart and paid into a special fund in the treasury of the said municipality to be identified as 'the . . . special redemption fund.'

"(f) If any surplus shall be accumulated in any of the above funds, it shall be disposed of as provided in section 66.069 (1) (c)."

It would seem that if the legislature had intended by its enactment of sec. 66.067, Stats., to do no more than to extend the definition of public utilities in sec. 66.066 to include the projects referred to in sec. 66.067, and otherwise to make all of the provisions of sec. 66.066 applicable, nothing more would have been necessary than to amend sec. 66.066 (1) by including hospitals, etc., in the class of utilities authorized to be built, operated, etc., by a municipality. If it had been intended to make all of the provisions of sec. 66.066 applicable that would have been a simple way of expressing it. Instead, a new section was created affecting only the public works therein described and without any reference to sec. 66.066, except to provide that such works "may be financed" in the manner provided in the latter section.

Sec. 66.066, Stats., deals with a number of matters which cannot properly be considered as being connected with the matter of financing; for instance, the fixing of the cost of and payment for services rendered the municipality by the utility, the rates to be charged consumers, etc. If plaintiff's contention were correct compliance with these provisions, which have no relation to the matter of financing, would be required. Plaintiff does not contend that such compliance is required.

The subsections of sec. 66.066, Stats., quoted above and to which plaintiff particularly refers, do not deal solely with the matter of financing; they also have to do with the operation of the utility and the manner in which its operating

revenue is to be used and applied. It is to be observed also that by the terms of the second paragraph of sub. (2) (c) 3, the governing body of the municipality is authorized at any time after one year's operation to make reassignment of the proportions of revenue originally made, indicating that the provisions of the subsections were intended to deal with the operation rather than with the original financing of a utility.

It is our view that in this case, particularly in view of the arrangement between the city and the association for the maintenance and operation of the hospital, the provision in sec. 66.067, Stats., that a municipality "may finance" the hospital utility in the manner provided by sec. 66.066 must be construed to mean that there is to be compliance with the latter section only with respect to the manner in which the funds for its construction are to be raised. There has been compliance in that respect.

Plaintiff contends that since the hospital is not to be operated as a municipal utility it is not eligible for financing as such. It is true that the city does not plan to operate the hospital—it is to be operated by the association under the lease. He does not question the city's authority to operate a hospital. The answer to his contention is found in the following quotation from *Eau Claire Dells Imp. Co. v. Eau Claire*, 172 Wis. 240, 252, 179 N. W. 2:

"In operating a waterworks system a city acts in a proprietary and not in a governmental capacity. *Piper v. Madison*, 140 Wis. 311, 122 N. W. 730; *State Journal P. Co. v. Madison*, 148 Wis. 396, 134 N. W. 909; *Nemet v. Kenosha*, 169 Wis. 379, 172 N. W. 711. Acting in a proprietary capacity it may, generally speaking, exercise such powers as a private concern engaged in a like business may exercise; for in their business matters municipal corporations are governed by very much the same rules as private corporations. *Schneider v. Menasha*, 118 Wis. 298, 305, 95 N. W. 94; *Omaha W. Co. v. Omaha*, 147 Fed. 1, 77 C. C. A. 267, 12 L. R. A. (N. S.) 736; *Biddeford v. Yates*, 104 Me. 506, 72 Atl. 335;

*Little Falls E. & W. Co. v. Little Falls,* 102 Fed. 663. Therefore, wholly irrespective of direct legislative authority, the city could contract to have another do that which it could do in its proprietary capacity, namely, build and operate the dam for waterworks purposes."

The same must be said of the operation by a city of a hospital.

Plaintiff contends that the indebtedness represented by the $1,570,000 of bonds does not qualify for exemption from the constitutional debt limit, "five per centum on the value of the taxable property" in the city. The city does not become indebted by the provisions of the ordinance nor by the terms of the bonds. Nothing is pledged for the payment of the principal and interest of the bonds except the hospital property and the rental to be paid by the association. No obligation to pay the bonds from the city's funds, except such rentals, may be read out of any of the provisions of the ordinance or the terms of the bonds. On the contrary, the ordinance provides that the bonds shall be payable only out of the "special redemption fund and shall be a valid claim of the holders thereof *only* against said special redemption fund." Likewise, each bond contains the provision that it "is payable only from the rental accruing under" the lease, and that it "does not constitute an indebtedness of" the city. The statute itself, sec. 66.067, provides that any indebtedness created pursuant to it "shall not be considered an indebtedness of such . . . city. . . ." The bonds do not create an obligation which constitutes an indebtedness under sec. 3, art. XI, Const.

Since the indebtedness, if it might be so designated, created by the bonds is "secured solely by the property [and] income of" the hospital it is, by virtue of the 1932 amendment, exempt from the debt limitation originally fixed by the constitutional provision. The amendment is as follows:

"Providing, that an indebtedness created for the purpose of purchasing, acquiring, leasing, constructing, extending, adding to, improving, conducting, controlling, operating, or

managing a public utility of a town, village, or city, and secured solely by the property or income of such public utility, and whereby no municipal liability is created, shall not be considered an indebtedness of such town, village, or city, and shall not be included in arriving at such five per centum debt limitation."

It is claimed that the city's undertaking to pay to the association $75,000 per year for the term of forty years for the maintenance, etc., of the hospital, creates a present indebtedness of $3,000,000 within the constitutional limitation. The constitutional provision speaks of indebtedness, not of contractual obligations. There is no indebtedness except that which accrues and matures from year to year, and then only if the association performs as the lease requires. The obligation does not ripen into an indebtedness until at the end of each year's performance by the association. We do not suppose that it would be contended, for instance, that a city would be indebted in the sum of $40,000 immediately upon his qualification for office of an official elected for a term of four years at an annual salary of $10,000.

"Where a municipality contracts for annual services for a series of years, to be paid for by annual payments, such contract does not come within such a prohibition. 'In such case the whole amount which may ultimately become due does not constitute a debt, within the meaning of the constitution. To that end, regard is to be had only to the amount that may become due within a certain year or other period.' 1 Dillon, Mun. Corp. sec. 136a, and cases cited." *Stedman v. Berlin,* 97 Wis. 505, 512, 73 N. W. 57. See also *Herman v. Oconto,* 110 Wis. 660, 86 N. W. 681.

We conclude, therefore, that neither the ordinance, the bonds, nor the agreement to pay the stipulated $75,000 per year for maintenance, etc., is chargeable against the city's five per cent debt limit fixed by sec. 3, art. XI, Const.

*By the Court.*—Judgment affirmed.

HUGHES, J., dissents.