JAMES R. KIMMEY, Division of Health Policy and Planning,Department of Administration
You requested my opinion whether a municipality can utilize its bonding authority for public utilities under sec. 66.066, Stats., to *Page 227 
finance construction of a home for the aged referred to in sec. 66.067, Stats., and lease the facility to a corporation organized for profit to operate.
Your specific inquiry is concerned with a proposed facility in a village, and this opinion is limited to powers of cities and villages. The latter municipal units of government have broad home-rule powers, whereas counties and towns have only such as are expressly given by statute or which are necessarily implied.
The first question is whether a village can own and operate a home for the aged. Reference to such facility in sec. 66.067, Stats., is not necessarily a grant of power to a village to own and operate such a facility. Section 66.067, Stats., is primarily a financing statute. It defines certain facilities, not common to all municipalities named, which may be considered public utilities for financing purposes so that the provisions of sec. 66.066, Stats., may be utilized. The various types of municipalities must find their power to engage in the construction and operation of the various facilities listed in other statutes, if they have limited powers, or in their general statutory powers which are reinforced by constitutional home-rule powers in the case of cities and villages.
Although I find no express statute which authorizes a village to own and operate a home for the aged, I am of the opinion that a village does have such power in view of Art. XI, sec. 3, Wis. Const., and secs. 61.34 and 66.067, Stats.
I am confident that a court would hold that ownership and operation of a home for the aged by a village would be for a public purpose and that public funds could be expanded and public debt incurred therefor.
Ownership and operation of a home for the aged by a village would probably be considered a proprietary rather than a governmental function. Wisconsin cases have recognized that valuable private benefits may be generated as the natural result of a legitimate public project and have approved sale of excess property or lease to private individuals when not needed for public use.
The crucial question under the public purpose doctrine is whether the return to the public is in sufficient degree so as to negate the *Page 228 
suspicion that a private benefit is foremost. State ex rel.Bowman v. Barczak (1967), 34 Wis.2d 57, 71, 148 N.W.2d 683.
In 58 OAG 179, 187 it was stated:
"There is a recognizable distinction, therefore, between cases where a public improvement is erected for `express or apparent' private purposes or the public improvement is shown to be `wholly unnecessary,' and cases where `the surplus is a mere incident' to the public improvement and the public purpose it serves. KaukaunaW.P. Co. v. Green Bay M.C. Co., (1891) 142 U.S. 254,35 L.Ed. 1004, 12 S.Ct. 173. See also Bell v. Platteville, (1888)71 Wis. 139, 146, 36 N.W. 831, and Stone v. Oconomowoc, (1888) 71 Wis. 155 36 N.W. 829."
To sustain a public purpose, the advantage to the public must be direct and not merely incidental. The fact that a law or project may benefit certain individuals or one particular class of people more immediately than other individuals or classes does not necessarily deprive the law or project of its public purpose.State ex rel. Warren v. Nusbaum (1973), 59 Wis.2d 391, 418.
In Meier v. Madison (1950), 257 Wis. 174, 181, 42 N.W.2d 914, the court held that secs. 66.066 and 66.067, Stats., could be utilized by the City of Madison to finance Madison General Hospital, a city-owned facility, even though the hospital was to be operated by a nonprofit hospital association under a contract and long term lease.
It can be argued that since the court in Meier quoted from and relied upon Eau Claire Dells Improvement Company v. City of EauClaire (1920), 172 Wis. 240, 252, 179 N.W. 2, which involved a long term lease of a city water utility to a corporation for profit, that a court would approve a contract providing for the operation of a village owned and financed home for the aged by a profit corporation.
A court would have to weigh the local situation in such case and balance the interests of the public against those which would accrue to private interests including the profit corporation which served as operator.
I am of the opinion that a court, absent special compelling circumstances, would not approve such an operation. *Page 229 
In McQuillin, Municipal Corporations (3rd Ed.), Vol. 2, § 10.40, p. 849, it is stated that "delegation to a private corporation of operation of a city hospital" has been held unlawful, although other cases hold that lease to a nonprofit charitable corporation of a city hospital for operation and maintenance is valid where the contract contained provisions adequately protecting the public interest.
In the hospital area, the legislature has acted to provide that a city or village may lease "to a non-profit corporation, for terms not exceeding 40 years" municipally-owned hospital facilities. Sec. 66.501, Stats.
While the legislature has not expressly prohibited leasing to a profit corporation, the legislative intent is that, at least as to hospitals, operation should be by the municipal unit of government or by a nonprofit corporation. This intent is particularly important in view of the state-wide concern versus the local interest in the subject matter of hospitals and homes for the aged.
In conclusion, whereas I am of the opinion that a village could own and operate a home for the aged, finance the same under secs. 66.066, 66.067, and lease the facility to a nonprofit corporation if sufficient provisions were included to protect the public interest, I am of the opinion that a court probably would not sanction lease for operation by a profit corporation.
RWW:RJV