ED JACKAMONIS, Speaker State Assembly
You have requested my opinion on three questions based on the facts stated below.
The City of Marshfield presently leases the Purdy Building, which it owns, to the Mid-State Vocational, Technical and Adult Education District (hereafter VTAE District). The latter utilizes it for its educational purposes. The city is considering construction of a new building at a site adjacent to the University of Wisconsin Center, which would be owned by the city but which would be leased to the VTAE District. The Purdy Building would revert to the city to be used for other municipal purposes. It is suggested that construction of a building at the new site would foster a more comprehensive educational atmosphere and allow the University of Wisconsin and the VTAE District to cooperate more fully.
You inquire:
 (1) Can the City of Marshfield borrow money or issue bonds for the construction of this building pursuant to SS67.04(2)(a), Stats., as a "public building"?
 (2) If the answer to question (1) is in the negative, can the City construct this building, pursuant to SS67.04(2)(b), Stats., and consider it to be a "new school building"?
 (3) If the answer to questions (1) and (2) are in the negative, can the City construct this building pursuant to SS67.04(8), Stats., as a regional project?
The answer to questions one and three is no. The answer to question two is probably not.
Where a city has statutory power to engage in an activity, such as operation of a hospital in a proprietary capacity, it may construct and lease municipal buildings to a non-profit organization to operate and maintain as a hospital and utilize revenue bonds to finance construction. Meier v. Madison,257 Wis. 174, 42 N.W.2d 914 (1950). Where there is express statutory authority, buildings may be constructed by a city through the issuance of revenue bonds and leased to a private corporation where the purpose is to attract industry or *Page 167 
trade to the community or to stabilize the community and provide employment. See 15 McQuillen Mun. Corp. § 39.31 (3rd Ed.). While cities also have power to lease excess real estate held for a public purpose but not presently needed for such purpose, such power would not authorize a city to utilize bonding to construct buildings not presently needed for its own public purpose for lease to a private person or another municipality. Statutes authorizing bonding are to be strictly construed. In 15 McQuillenMun. Corp. § 43.21 (3rd Ed.) it is stated:
 It is usually held that authority to issue bonds can be conferred only by language which leaves no reasonable doubt of an intention to grant it, and, in accordance with the well-established rule of construction, adhered to in early and late judicial decisions, if the intention of a statute purporting to authorize the issuance of bonds is doubtful, the doubt will be resolved against the authority to issue the bonds. Uniform bond acts exist in some states and they usually are strictly construed. In considering the legality of a proposed bond issue, courts construe the constitution and statutes more strictly than they are construed in determining the validity or bonds already issued and disposed of.
Although Wis. Const. art XI, § 3, guarantees cities and villages the power to determine their local affairs and government subject to the constitution and legislative enactments of statewide concern as shall with uniformity affect every city or every village, it also provides: "No county, city, town, village, school district or other municipal corporation may become indebted in an amount that exceeds an allowable percentage . . ."; establishes percentage limits for cities and cities authorized to "issue bonds for school purposes"; and requires the levy of a tax before or at the time the bonds are issued.
Sections 67.03 and 67.04, Stats., were enacted to implement the constitutional provisions and sec. 67.04(2), (8), Stats., provides, in material part:
 (2) Cities shall not borrow money or issue bonds therefor for any purpose except only those specified in this subsection, and subject to the general limitation of amounts prescribed by s. 67.03, namely: *Page 168 
 (a) For the erection, construction, enlargement or repair of a city hall or other public buildings
and the purchase of sites for the buildings . . . .
 (b) For the purchase or erection of new school buildings, or additions to old buildings . . . for the purpose of providing for the educational requirements of the city including territory attached to such city for school purposes; to acquire sites and erect or enlarge buildings thereon, and to equip such new or old buildings for parental schools: to do renovating, remodeling and repairing of existing buildings . . . .
. . . .
 (8) By any county, town, city or village, to acquire, develop, remodel, construct and equip land, buildings and facilities for regional projects, either alone or acting jointly under s. 66.30.
A basic rule of statutory construction requires that specific statutory language controls over less specific language. FredRueping Leather Co. v. City of Fond du Lac, 99 Wis.2d 1,298 N.W.2d 227 (1980). Section 67.04(2), Stats., refers only to city bonding. Therefore, a "public building" would be one used for city purposes, not VTAE purposes. Similarly, a "new school building" would be one erected "for the purpose of providing for the educational requirements of the city . . ." and not for the needs of the VTAE District. Sec. 67.04(2)(b), Stats. As noted below, sec. 67.04(6), Stats., permits VTAE districts to issue bonds for the erection of its own school buildings.
In my opinion the building to be constructed by the City of Marshfield and leased to the VTAE District would not constitute a public building for a city public purpose within sec.67.04(2)(a), Stats. It is to be constructed primarily for a VTAE District and any use by the citizens of Marshfield would be limited by the lease and by secs. 38.12 and 38.14, Stats., which places exclusive control of "the district schools," buildings and equipment therein in the hands of the district board.
In my opinion the proposed building, even if agreed upon jointly by the city council and the District VTAE Board, would not constitute a building for a "regional project" as that term is used in sec. 67.04(8), Stats. The term "regional project" is not defined in chs. 66 *Page 169 
and 67, or other provisions of the statutes. While its meaning may not be limited to items or facilities included in an "adopted regional master plan" under sec. 66.945(10)-(12), Stats., it cannot be said that every project which may benefit a region is a regional project. A region is something different than a city or VTAE District. The boundaries of the latter are established under sec. 38.06, Stats. The boundaries of a region for regional planning purposes are fixed by the Governor under sec. 66.945(2)(b), Stats.
With respect to your second question, I am of the opinion that the city probably could not construct and fund the building under sec. 67.04(2)(b), Stats., as a "new school building." As stated in 71 Op. Att'y Gen. 9 (1982), VTAE District Boards do operate schools, and although a VTAE District may be a school district for purposes of the public records law, sec. 19.21, Stats., sec.38.01(2), (4), Stats., distinguish "VTAE Districts" and "school districts" for purposes of ch. 38, Stats. In 64 Op. Att'y Gen. 24 (1975), it was stated that VTAE schools were not "district schools" within the meaning of Wis. Const. art. X, § 3, and were not subject to the restrictions of that provision which require that education be "free and without charge for tuition to all children between the ages of 4 and 20 years . . . ." I construe the terms school and school buildings as used in the first four phrases of sec. 67.04(2)(b), Stats., to be a school and school building operated by the public school system as primary, elementary and high schools under supervision of the Superintendent of Public Instruction. The 1961 statutes, provided for the creation of a vocational and adult education area school district having its own board and such board had power to levy taxes and could incur indebtedness for buildings. See secs.41.155, 41.16, Stats.(1961). The statutes also provided for local
schools of vocational and adult education within a city or village or as a local board of vocational and adult education comprising a union high school, common or unified school district. See sec. 41.15, Stats. (1961). In 50 Op. Att'y Gen. 25 (1961), it was stated that a city board of vocational and adult education was not a separate entity from the city and has no separate authority to borrow money and issue bonds. Such board had to request the city to utilize its bonding power under then sec. 67.04(2)(b), Stats. (1961), which provided that a city could issue bonds for the erection of buildings "for parental or schools of vocational and adult education, or for use by the local board of vocational and adult education." Chapter 154, Laws of 1971, amended *Page 170 
sec. 67.04(2)(b), Stats., to eliminate the word "or" after "parental" and the words "of vocational and adult education, or for use by the local board of vocational and adult education." The chapter also abolished the system of local vocational and adult education boards (city, village and school district) and replaced it with a system of vocational, technical and adult education districts having district boards with power to levy taxes and borrow money through issuance of general obligation bonds. See sec. 67.04(6), Stats., as to the express power of vocational, technical and adult education districts to borrow and bond for erection of educational buildings. In view of the legislative history of sec. 67.04(2)(b), Stats., and the restrictive meaning this office has placed on the words "district schools," it cannot be said that sec. 67.04(2)(b), Stats., would authorize the City of Marshfield to issue bonds to erect a building to be wholly utilized by the VTAE District on a leased basis.
BCL:RJV